BEST UNIVERSAL LOCK CO., INC., ET AL.,[1] PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 5602–63—5604–63.   Filed October 7, 1965.

*Willis K. Kunz* and *Elmer E. Lyon,* for the petitioners.

*Dennis J. Fox,* for the respondent.

MULRONEY, *Judge:* Respondent determined the following deficiencies in the petitioners' income taxes:

| Docket No. | Petitioner | Year | Deficiency |
|---|---|---|---|
| 5602–63 | Best Universal Lock Co., Inc | 1960 | $2,629.79 |
|  |  | 1961 | 190.66 |
| 5603–63 | Best Lock Corp | 1959 | 77,772.29 |
|  |  | 1960 | 82,265.18 |
|  |  | 1961 | 3,596.96 |
| 5604–63 | Frank E. Best and Emilia A. Best | 1959 | 27,282.67 |
|  |  | 1960 | 76,084.33 |
|  |  | 1961 | 12,151.86 |

<hr />

[1] Proceedings of the following petitioners are consolidated herewith: Best Lock Corporation, docket No. 5603–63; and Frank E. Best and Emilia A. Best, docket No. 5604–63.

1

The issues in these consolidated cases are (1) whether Best Lock Corp. is entitled to deductions under section 174 of the Internal Revenue Code of 1954 [2] for certain research and development expenses in 1959, 1960, and 1961; (2) whether the research and development expenses incurred by Best Lock Corp. in 1959, 1960, and 1961 are, in fact, constructive dividends to Frank E. Best in those years; (3) in the event that the research and development expenditures of Best Lock Corp. are constructive dividends to Frank E. Best, whether the latter is entitled to deductions under section 174 in 1959, 1960, and 1961 with respect to these expenditures; (4) whether Best Lock Corp. is entitled to a deduction in 1959 for certain moving expenses incurred in that year; (5) whether Frank E. Best is entitled to a deduction for certain experimental and development expenses incurred by him in 1961; and (6) whether Frank E. Best is entitled to deductions as ordinary and necessary business expenses in 1959, 1960, and 1961 for the use of a part of his residence as an office and whether he is entitled to deductions in those years for automobile expenses and depreciation. The deficiencies in docket No. 5602-63 (Best Universal Lock Co., Inc.) for 1960 and 1961 will depend upon our decision on the issues involving Best Lock Corp. in docket No. 5603-63 and can be handled by the parties in the Rule 50 computation. Certain concessions by the parties can be given effect in the Rule 50 computation.

### FINDINGS OF FACT

Some of the facts were stipulated and they are so found.

Frank E. and Emilia A. Best, husband and wife, are residents of Indianapolis, Ind. They filed their joint income tax returns for 1959, 1960, and 1961 with the district director of internal revenue, Indianapolis, Ind.

The Best Lock Corp. is a Delaware corporation organized in 1928 under the name of Automatic Manufacturing Co., changing the name to its present form shortly after its incorporation. Best Universal Lock Co., Inc., is an Indiana corporation incorporated on May 17, 1938, as a wholly owned subsidiary of Best Lock Corp. and it has remained so owned through the years 1959, 1960, and 1961. The above corporations filed Federal income tax returns for the years 1959, 1960, and 1961 with the district director of internal revenue, Indianapolis, Ind.

Frank E. Best, who was about 82 years old at the time of trial, went into the lock business in 1920. He is a registered mechanical engineer under the laws of the State of Indiana and during the past 45 years he has received about 100 patents, most of them in the locking art.

On or about October 2, 1920, Frank organized a corporation under the laws of the State of Washington originally known as the Best

---

[2] All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise noted.

Lock Co. and, prior to the years here involved, the name of the corporation was changed to Frank E. Best, Inc. During the years here involved Frank owned 301,616 shares of stock out of the 598,710 shares in the corporation issued and outstanding.

During the years here involved Frank E. Best, Inc., held 300,000 of the 386,469 outstanding shares of stock in Best Universal Lock Co. (Washington), a corporation which was organized on or about September 14, 1923, under the laws of the State of Washington.

Shortly after the organization of Best Lock Corp., a part of its stock was issued to Best Universal Lock Co. (Washington). During the years 1959, 1960, and 1961, Best Lock Corp. had issued and outstanding 123,128.85 shares of stock which were held as follows:

|  | Shares |
| --- | --- |
| Best Universal Lock Co. (Washington), held by Frank E. Best as trustee | 95,556.34 |
| Frank E. Best | 4,083 |
| Walter E. Best [1] | 329 |
| Donald Best [1] | 8 |
| Others | 23,152.51 |

[1] Son of Frank E. Best.

During the years here involved Frank was the president of Best Lock Corp., Best Universal Lock Co., Inc. (Indiana), and the various affiliated corporations. Frank's three sons were associated with the same group of corporations in different capacities.

Best Lock Corp. specializes in providing locking systems for plants, schools, or institutions requiring many locks and master key control. Best Lock Corp. has never been registered or qualified to do business in the State of Indiana. As a result, Best Universal Lock Co., Inc. (Indiana), acts in the capacity of an agent in the State of Indiana for the manufacturing and selling activity of the Best Lock Corp. The Best Lock Corp. owns or leases all of the assets used in the conduct of its business in Indiana, and receives the resulting profit or loss from the manufacturing and selling activity carried on by its agent, the Best Universal Lock Co., Inc. (Indiana).

Between 1920 and 1930 Frank assigned outright or agreed to assign certain patents on locks and locking devices to Frank E. Best, Inc., including, generally, the patents or any locking devices he might obtain during this period. In 1928 Frank E. Best, Inc., granted a license (license No. 4) to the Automatic Manufacturing Co. (later Best Lock Corp.) to manufacture locks or locking machinery under 48 patents then issued or pending. In 1940 Frank granted a license (license No. 5) to Best Lock Corp. to use certain of Frank's patents covering dynamic rectifiers and balancers. Subsequent to 1940 amendments and collateral agreements were executed in connection with

license No. 5, and additional patents on roller bearings were licensed to Best Lock Corp.

On December 22, 1948, Frank granted a license to Frank E. Best, Inc., which in turn granted a sublicense to Best Lock Corp. to manufacture and use a lock (designated as an "unpickable lock") under patents which had been issued to Frank. On January 2, 1956, Frank granted a nonexclusive license to Best Lock Corp. to manufacture and use a device described as an isothermal air compressor. The license provided, in part, as follows:

WHEREAS, Best is the owner of all the rights, title, and interest in and to an invention designated as isothermal air compressor, couched in and forming that part of Patent Application No. 529,281, filed in the United States Patent Office on the 18th day of August, 1955, by said Frank Ellison Best, specifically illustrated Figures 6 to 9 inclusive thereof; and,

WHEREAS, the company is desirous of acquiring this Non-Exclusive License to make, use, and lease said isothermal air compressor;

NOW, THEREFORE,

1. Best does, by these presents, give and grant unto the Company this Non-Exclusive License identified as Non-Exclusive License 1–2–56 upon the isothermal air compressor as above set forth and described and upon each and every United States Patent upon said isothermal air compressor growing out of said invention. This license shall not apply to any other product or invention other than said air compressor which might grow out of said patent application.

2. This license shall be subject to all terms and conditions set forth in Collateral Agreement 1–2–56.

3. Company shall have the non-exclusive right to make, use, and lease the said invention and patent or patents throughout the United States and the territories thereof for the full life term of said patent or patents.

Under a collateral agreement to the January 2, 1956, license, Best Lock Corp. was "required to pay any and all costs, including experimentations, development, patent expense, improvements, manufacture, lease, and advertising of said isothermal air compressor and/or any part thereof during the full life of [the license]." The collateral agreement also provided that all products manufactured under the license should be leased rather than sold, and further provided that Frank had the right to terminate the license upon 60 days' written notice if, in his judgment, the corporation failed to carry out any part of the agreement or otherwise failed to act in good faith. As of the time of trial, Frank had obtained no patent on this device, although he had filed application for such a patent.

On June 4, 1959, Frank and the Best Lock Corp. executed the following agreement:

AGREEMENT RELATIVE TO EXPERIMENTATION AND DEVELOPMENT OF INVENTIONS

THIS AGREEMENT, made and entered into this 4th day of June, 1959, by and between Frank E. Best, a resident of Indianapolis, Indiana, (hereinafter referred to as "Best") and Best Lock Corporation, a Delaware corporation, (hereinafter referred to as "Lock");

WITNESSETH THAT:

WHEREAS, Best, an inventor with numerous inventions, patents, and copyrights is continually bringing out new inventions; and,

WHEREAS, the value of the inventions is not fully apparent until considerable developing and experimentation be done thereon; and,

WHEREAS, Lock is desirous of experimenting with and developing the same, in order to the better evaluate them preliminary to making deals for licenses thereon; and,

WHEREAS, Lock is desirous of having the first right of refusal on any licensing agreement on said inventions, patents, and copyrights,

Now, THEREFORE, in consideration of the mutual promises of the parties, it is agreed as follows:

1. Lock agrees to develop, experiment with and adapt for manufacture, sale and use any inventions of Best which both Best and Lock deem worthy of such expense, with any funds allocated by Lock for such use.

2. Best agrees to give Lock the first right of refusal on any license agreement on said inventions developed by Lock.

3. It is understood and agreed that all such inventions are and shall remain the property of Best, unless otherwise specifically agreed, and that Lock will acquire no shop rights or interest in any way in said inventions by virtue of the development, experiment with, or adaptation for manufacture, sale and use thereof.

IN WITNESS WHEREOF the parties have hereunto set their hands and seals the day and year first above written.

(S)  Frank E. Best,
FRANK E. BEST,
BEST LOCK CORPORATION,
By (S)  WALTER E. BEST,
*Vice President.*

In the years 1959, 1960, and 1961, Frank was in charge of certain experiments carried on in a laboratory on the premises of Best Lock Corp. The expenditures of Best Lock Corp. for the experiments were, with some exceptions, classified by code names which did not indicate the nature of the experiments and were otherwise undecipherable. The experimental projects undertaken in 1959, 1960, and 1961 included two locks, one designated as an unpickable lock and the other as lock project X. In 1959 and 1960 the expenditures for experiments included amounts charged to a book written by Frank representing printing expenses of a prepublication copy.

During the years 1959, 1960, and 1961 all of the code names on the corporate books and records pertaining to expenditures for experiments (with the exception of 160 H) involved work on the isothermal air compressor, which was broadly described at the trial as a machine or an engine to compress air without a rise in temperature. The compressor includes high-speed bearings and a dynamic rectifier as part of its mechanism.

During the years 1959, 1960, and 1961 the work on the isothermal air compressor was kept secret from all employees of Best Lock Corp.

The corporation's accountant had no knowledge about the secret code names pertaining to the expenditures for the experiments. Such secrecy was motivated by Frank's concern that the apparatus might fall into the hands of Russia or China.

Between January 1959 and about February 1961, Best Lock Corp. had expended a total of $310,102.16 on the experiments here in question. At a special meeting of the board of directors held on February 7, 1961, Frank and his son Walter (constituting a quorum of the board of directors) adopted the following resolution:

Whereas, an agreement was entered into under date of June 4, 1959, by and between Frank E. Best, * * * and Best Lock Corporation * * * and

Whereas, a year and seven months of experimenting have ensued since that date at a total cost of approximately one quarter million dollars, without final success, and

Whereas, the company's financial condition has steadily deteriorated during this period, and it seems advisable to those concerned to abandon, terminate and forfeit said agreement forthwith, insofar as it pertains to non-lock items, and spend no more money on Mr. Best's engines, and to charge off the said expenditures heretofore made thereon as business losses.

Now, therefore, be it resolved that Best Lock Corporation does hereby abandon, terminate and forfeit said agreement insofar as it pertains to Mr. Best's engines, as of February 1, 1961, and forthwith cease and stop spending money on Mr. Best's said engines.

Frank then continued to work on the isothermal air compressor and at times he would be assisted by corporate employees. Best Lock Corp. continued to make payments after February 1961 in connection with Frank's expenses on the isothermal air compressor. Frank reimbursed Best Lock Corp. for these expenses.

In June 1961 Frank E. Best and the Best Lock Corp. executed an agreement granting to Best Lock Corp. a nonexclusive license to make, use, and vend all articles under any patents which would be allowed on lock X for the full terms thereof, and by an exclusive license dated November 6, 1963, Frank and the Best Lock Corp. assigned all their interest in lock X to Best Products, Inc., a corporation organized for the purpose of manufacturing and selling lock X.

In 1959 and 1960, Frank worked on a prepublication copy of a book entitled "Breaking Out of the Overcast—Structure of the Physical Universe." Best Lock Corp. paid printing and other expenses in connection with this book in 1959 and 1960 and charged these payments to "experimental" expense deductions in those years in the respective amounts of $3,427.27 and $12,173.65.

During the years 1959, 1960, and 1961, Frank received no salary from Best Lock Corp. or any of its affiliated corporations. During these years Frank's income consisted primarily of royalties and engi-

neering fees received from Best Lock Corp. and its affiliated corporations.

Best Lock Corp. claimed deductions for "experimental" expenses on its income tax returns for 1959, 1960, and 1961 in the respective amounts of $54,341.28, $240,148.84, and $13,988.21. Best Lock Corp. also claimed deductions in 1961 for the amounts of $682.96 and $940.87 which were included within the deduction for "office supplies." The first amount ($682.96) represented an expenditure for "experimental" project CM VII, while the second amount represented work done by Frank for the Best Lock Corp. on lock project X.

Respondent, in his statutory notice of deficiency in docket No. 5603-63, disallowed the deductions claimed by Best Lock Corp. for "experimental" expenses in 1959, 1960, and 1961 in the amounts of $54,341.28, $240,148.84, and $15,612.04, respectively. The disallowance of the deduction of $15,612.04 in 1961 included the items of $682.96 (project CM VII) and $940.87 (lock project X). Respondent now concedes that the deduction in 1961 of $940.87 for lock project X is allowable. Best Lock Corp. also concedes that the amounts of $3,427.27 and $12,173.65 charged to "book" in 1959 and 1960, respectively (which amounts were included in the total "experimental" expenses deducted on the 1959 and 1960 returns in the total amounts of $54,341.28 and $240,148.84, respectively), are not deductible. Frank E. Best (docket No. 5604-63) concedes that the above amounts, $3,427.27 in 1959 and $12,173.65 in 1960, are includable in his taxable income for those years.

Respondent determined in his statutory notice of deficiency in docket No. 5604-63 that the "experimental" expenses deducted by Best Lock Corp. in 1959, 1960, and 1961 were taxable as dividends to Frank E. Best to the extent that the corporation had earnings and profits available in those years.

Frank E. Best claimed a deduction for experimental expenses in his 1961 income tax return in the amount of $23,669.68. Respondent disallowed this deduction with the explanation that it was not allowable under section 162(a) or any other section of the Internal Revenue Code of 1954.

During the years 1959, 1960, and 1961, Frank E. Best maintained an office in his home where he had a drawing attachment and space for exhibits and books of reference. He owned two cars during these years, one used as a family car and the other used to some extent by Frank in his business as a professional engineer. In his income tax returns for 1959, 1960, and 1961, Frank claimed the following deduc-

tions in connection with his automobile, the business use of his home, and patent attorney fees:

| Item | 1959 | 1960 | 1961 |
|---|---|---|---|
| Office in home (rent on business property) | $300.00 | $300.00 | $300.00 |
| Automobile depreciation | 824.67 | 332.94 | 544.56 |
| Automobile expenses | 963.60 | 647.25 | 595.25 |
| Patent attorney fees | 830.00 | | 34.50 |

Respondent disallowed these deductions claimed in 1959, 1960, and 1961 with the explanation that they were not allowable under sections 162(a), 167, or any other section of the 1954 Internal Revenue Code due to lack of substantiation.

Sometime prior to September 30, 1958, the State of Indiana commenced condemnation proceedings against Best Lock Co., as lessee, and against its landlord as owner of the property occupied by Best Lock Corp. at 10 North Senate Avenue, Indianapolis, Ind. Suit was brought in 1958 on the condemnation action in the Superior Court, Marion County, Ind., but the suit was settled that same year by the agreement of the parties. As a result of the condemnation, Best Lock Corp. and its Indiana agent, Best Universal Lock Co., Inc. (Indiana), moved to a new location at 6161 East 75th Street, Indianapolis, Ind., where Best Lock Corp. obtained a new leasehold interest. On September 30, 1958, the State of Indiana paid Best Lock Corp. $72,017.40 as the total condemnation award.

The books, records, and Federal tax returns of Best Lock Corp. show the following treatment given the expenditures made in connection with the move in 1958 and 1959:

*Amount*

Expended in 1958, per books, for claimed replacement improvements _____ $39,504.11
Moving and legal expenses deducted, 1958 _____ 10,085.38
Expended in 1959, per books, for claimed replacement improvements _____ 32,513.29
Moving expenses deducted, 1959 _____ 18,100.50

Total expended _____ 100,203.28
Less: condemnation award _____ (72,017.40)

Excess expended over award _____ 28,185.88

Respondent, in his statutory notice of deficiency, determined that the amount of $18,100.50 claimed by Best Lock Corp. as a moving expense deduction for the year 1959 represented a capital expenditure depreciable over a life of 25 years.

Best Lock Corp. contends that it is entitled to deduct the amounts of $50,914.01, $227,975.19, and $14,671.17 as research and experimental expenses under section 174 in the years 1959, 1960, and 1961, respectively. These expenditures were in connection with a device known as an isothermal air compressor, with an item called an unpickable lock, and with a project identified as 160 H. The parties appear to agree that the amounts expended on the unpickable lock were $18,416.14, $25,932.67, and $251.05 in the years 1959, 1960, and 1961, respectively. Most of the remaining expenditures during this period were in connection with the isothermal air compressor.

Section 174(a)(1) provides that "A taxpayer may treat research or experimental expenditures which are paid or incurred by him during the taxable year in connection with his trade or business as expenses which are not chargeable to capital account" and that the "expenditures so treated shall be allowed as a deduction." Respondent argues that the research and development expenses paid by Best Lock Corp. in 1959, 1960, and 1961 in its work on the unpickable lock, the isothermal air compressor, and project 160 H are not deductible under section 174 because (1) the expenses were not in connection with the corporation's trade or business; (2) that the corporation had no proprietary interest in the experimentation; (3) that the experimentation was not paid as a result of an arm's-length transaction between Frank and Best Lock Corp.; and (4) that the corporation has not shown the purpose of certain categories of experimental expenses listed under shop payroll, office payroll, and other general accounts.

Respondent's argument that the expenses were not made in Best Lock Corp.'s trade or business ignores the corporation's long history of experimentation and efforts to develop new products. Since 1940 the corporation has been obligated to pay royalties to Frank under license No. 5 involving bearings and a dynamic rectifier. Subsequent to 1940, amendments and collateral agreements were made in connection with license No. 5, and additional patents on roller bearings were licensed to the corporation. Since 1948 the corporation has been granted a sublicense from Frank E. Best, Inc., under patents granted to Frank covering an unpickable lock. In 1956 Frank licensed the corporation to manufacture and use the isothermal air compressor (an engine consisting of a stator, a housing, a rotor, and bearings), and under a collateral agreement to the license the corporation was required to pay all costs for experimentation on this device. The experimentation during the years involved work on all these various items.

The evidence also indicates that the corporation obtained these various licenses and undertook the various programs of experimentation for the purpose of commercial gain. Certainly the experimentation on the unpickable lock, if successful, would give Best Lock Corp. an enviable competitive position in the market. The evidence here is that there just is no unpickable lock on the market today. The license and collateral agreement concerning the isothermal air compressor carefully sets forth the royalty payments and the details of manufacturing and licensing the device when it was ultimately produced. Finally, there is sufficient evidence to show that the final success of the isothermal air compressor depended upon the development and production of a proper bearing and proper means of balancing the rotor. Although the petitioners have been reluctant to fully explain these new devices, they have also explained satisfactorily their reasons for this reluctance and, at any rate, we believe there is sufficient evidence to show that these projects were an integral and bona fide part of the corporation's trade or business.

We believe the record clearly establishes that all of the experiments in question were connected with a continuing trade or business long conducted by Best Lock Corp. Respondent's effort to confine Best Lock Corp. to a trade or business of making locks is unwarranted by this record, and the cases cited by him which, for the most part, deal with the contours of an individual's trade or business, are distinguishable. See *John F. Koons*, 35 T.C. 1092; *Martin Mayrath*, 41 T.C. 582, on appeal (C.A. 5).

We find nothing in the legislative history of section 174 to support respondent's contention that the section was not meant to cover research and development expenses where a corporation was seeking to develop a new product unrelated to its past line of products. An express purpose of the new section in the 1954 Internal Revenue Code was to encourage taxpayers to carry on research and experimentation, S. Rept. No. 1622, 83d Cong., 2d sess., p. 33, and we think respondent's limited approach would prove inimical to such congressional purpose.

We do not agree with respondent that Best Lock Corp. did not have any proprietary interest in the experimental work here in dispute. Respondent ignores the various licenses and collateral agreements to such licenses going back to 1940 which clearly spell out a proprietary interest in the unpickable lock and in the other projects connected with the experimentation conducted by Best Lock Corp. during the years in question. It also appears that as a matter of practice over the years Frank has always licensed his inventions to Best Lock Corp. or to an affiliated corporation. Respondent's argument seems to be, however, that the agreement of June 1959 between Frank and Best Lock Corp., which purports to deal with experimentation and devel-

opment of inventions, somehow canceled all prior existing agreements and that all of the corporation's proprietary interest in this experimentation, if any, must be found in the June 1959 agreement. We think respondent has misinterpreted the nature of the June 1959 agreement. It was executed by Frank and Best Lock Corp. in June 1959 (after this Court had filed its opinion in *Best Lock Corporation*, 31 T.C. 1217, on Mar. 26, 1959) to make it clear that Best Lock Corp. would not acquire any "shop rights" in any inventions growing out of Frank's experiments. This agreement did not purport to terminate the prior license agreements (going back to 1948) under which Best Lock Corp. had obtained rights to manufacture and sell the unpickable lock. The language in the June 1959 agreement makes it quite clear that the parties were thinking about future license agreements growing out of Frank's inventions and that the existing licensing agreements would remain undisturbed.

Even under the June 1959 agreement under which the corporation agreed to carry on experimentation in return for the right of first refusal on new inventions, the corporation acquired, as a practical matter, significant proprietary rights, since the record shows that Frank has followed the practice over the years of always licensing his inventions to Best Lock Corp. or to an affiliated corporation.

Nor can we agree with respondent's argument that the corporation did not carry on the experimentation as a result of an arm's-length transaction. It is axiomatic, of course, that transactions between a stockholder and his controlled corporation will be scrutinized carefully in order to determine the *bona fides* of the transaction. Here, the interests of the corporation were given full consideration under the various licenses and collateral agreements, and there is no suggestion that the experimental costs incurred by the corporation under the various agreements, including the June 1959 agreement, were in any way unreasonable. All experimental costs were scrupulously accounted for on the corporation's books and records. Most of the costs here incurred by the corporation were paid to unrelated vendors and to various machine shops which carried on various phases of the experimental work. In other words, it is not as if these payments were made to Frank E. Best, the controlling stockholder, in the guise of experimental costs. The stipulation of facts and all of the evidence, including the testimony of respondent's witnesses, show that none of the payments deducted as research or experimental expenses was made to Frank. An executive of J. C. Thompson Tool & Die Co., which conducted a large amount of work under the experimentation program of Best Lock Corp. during 1959, 1960, and 1961 testified that his company constructed pilot models of the unpickable lock and the isothermal air compressor from plans and sketches supplied by Best

Lock Corp. We are satisfied that all the disputed experimental costs were paid by Best Lock Corp. under agreements that served bona fide corporate purposes and that these expenditures were not, as suggested by respondent throughout his brief, for the benefit of Frank E. Best.

Respondent concedes on brief that in the event we should find, as we do, that all of the costs for experimental projects here in dispute qualify under section 174, then Best Lock Corp. will be entitled to deduct the corporate outlays which, though concededly experimental costs, are merely designated as "shop payroll," "office payroll," "cash," and similar unidentified categories.

We find, and so hold, that Best Lock Corp. is entitled to deduct the disputed research experimental costs incurred by it in connection with the various projects in 1959, 1960, and 1961 as research and development expenses under section 174.

Our holding on the above issue is dispositive of the next issue, under which respondent contended that the experimental costs which he disallowed as deductions for the corporation were taxable as constructive dividends to Frank E. Best. We sustain petitioner Frank E. Best on this issue.

In February 1961, when Best Lock Corp. reached a corporate decision to stop its work on the isothermal air compressor, the work on this device was continued by Frank individually, who incurred expenses of $23,669.68 during 1961, which he claimed as a deduction on his return for that year. Respondent argues that the deduction must be disallowed on the ground that Frank's trade or business was as an inventor of locks and locking devices and that, consequently, the experimental costs on the isothermal air compressor were not a part of such trade or business within the meaning of section 174. We disagree with respondent. Although most of the approximately 100 patents obtained by Frank over the past 45 years were in the locking art, the evidence also shows clearly that Frank worked as an inventor in other fields. He was also a registered mechanical engineer. As early as 1940 Frank had made several patent applications for a dynamic rectifier and had granted a license to Best Lock Corp. to manufacture and sell such products when they were fully developed. The evidence shows that several patents were ultimately granted to Frank for a dynamic rectifier as well as for roller bearings, which were also licensed by Frank to Best Lock Corp. In addition, Frank had made a patent application in 1955 covering his work on the isothermal air compressor, and in 1956 had granted Best Lock Corp. a nonexclusive license to manufacture and use this device.

We are convinced, on the basis of this record, that Frank was engaged in business as an inventor and that he expected to exploit his

inventions profitably through royalties or otherwise. It is immaterial that he did not receive, as yet, any income from some of his inventions. The crucial question is whether he reasonably expected to realize profit from these various activities in connection with the non-lock items as well as from his lock inventions. The case of *John F. Koons*, *supra*, cited by respondent, is distinguishable since there the taxpayer incurred expenses, not in connection with an existing business, but preliminary to a new business. That is not the situation here. We find that Frank was already actively engaged in the trade or business of an inventor and that disputed expenditures incurred by him in 1961 are properly deductible by him as research and development expenses under section 174.

We believe the record establishes that Frank used an office in his home during the years 1959, 1960, and 1961 in connection with his trade or business of inventing, and to some extent as a professional engineer. Frank maintained this office in his home since he built the house in 1941 and he kept a drawing attachment there and space for exhibits and books of reference. There is no dispute over the reasonableness of the deduction of $300 claimed by Frank in each of these years in connection with this office. We hold that Frank is entitled to deduct this amount in each of the years 1959, 1960, and 1961 as an ordinary and necessary business expense under section 162.

Frank also claimed deductions for the use of an automobile for business purposes in 1959, 1960, and 1961 in the respective amounts of $1,788.27, $980.19, and $1,139.81. These totals included depreciation and expenses incurred. All the evidence we have is Frank's statement that "I would make trips to different places" and that "I would go to Fort Wayne and other places as such and I used it daily in my business." There are no specific amounts in evidence, no records, no estimates, no attempt to allocate depreciation and expenses between personal and business use. On brief, petitioner recognizes that "the evidence does not show any specific amount to which he is entitled as a deduction for each of the years" and explains that because of petitioner's age (nearly 82 years old) no attempt was made "to pursue the minute details of these claimed deductions where the amounts are small in relative comparison with the substantial amounts involved in other issues in this proceeding." In *Karl R. Martin*, 44 T.C. 731, 744, we held that the taxpayer was entitled to no deduction for travel and other expenses, stating, in part, as follows:

The only evidence presented was petitioner's testimony that he took a certain number of trips during the year to various locations on business for the various corporations, syndicates, and partnerships he owned or participated in and that it cost him an estimated flat amount per trip. There was no testimony, however, as to the approximate date of any trip, the organization benefited by the

travel, the purpose or reason for the trip, or the specific work performed. Petitioner has not only failed to establish the amounts spent on these trips but has also failed to establish by competent evidence that whatever trips were taken served any legitimate business purpose of his, as opposed to the organizations he purportedly made them for, or that they were ordinary and necessary expenses of his business. Therefore, even an approximation, if one could be made on the evidence presented, as provided for by *Cohan* v. *Commissioner*, 39 F. 2d 540, cannot properly be utilized. * * *

Similarly, in this case there is nothing which would permit us to make any approximation as provided for by *Cohan* v. *Commissioner*, 39 F. 2d 540. We sustain respondent on this issue.

The last issue involves petitioner Best Lock Corp. All of the facts on this issue are stipulated and they show, briefly, that Best Lock Corp. occupied certain premises in Indianapolis as lessee; that the State of Indiana commenced condemnation proceedings against Best Lock Corp. (as lessee) and the landlord; that suit was brought in 1958 on the condemnation action but was settled that same year by agreement of the parties; and that on September 30, 1958, the State paid Best Lock Corp. $72,017.40 as the total condemnation award. Best Lock Corp. (and its Indiana corporate agent) moved to a new location in Indianapolis where it obtained a new leasehold interest. The books, records, and Federal tax returns of Best Lock Corp. show the following:

| | |
|---|---|
| Expended in 1958, per books, for claimed replacement improvements_ | $39, 504. 11 |
| Moving and legal expenses deducted, 1958_____ | 10, 085. 38 |
| Expended in 1959, per books, for claimed replacement improvements_ | 32, 513. 29 |
| Moving expenses deducted, 1959_____ | 18, 100. 50 |
| Total expended_____ | 100, 203. 28 |
| Less: condemnation award_____ | (72, 017. 40) |
| Excess expended over award_____ | 28, 185. 88 |

Respondent disallowed the deduction for moving expenses claimed by Best Lock Corp. in 1959 in the amount of $18,100.50 and determined that it was a capital expenditure, depreciable over a life of 25 years. Respondent agrees that moving expenses may ordinarily be deducted as ordinary and necessary expenses under section 162. See *Electric Tachometer Corporation*, 37 T.C. 158. But his argument here, if we understand it correctly, is that before Best Lock Corp. can deduct any amount as moving expense it must prove that it was not already reimbursed for such expenses by the condemnation award. We do not agree with respondent.

Under the circumstances here, where it is stipulated that Best Lock Corp. received a total condemnation award from the State in settlement of the condemnation proceeding, we do not believe the corporation must show a negative fact, i.e., that moving expenses were not a

part of this lump-sum award. We believe that *Claude B. Kendall*, 31 T.C. 549, is analogous to the situation here. In that case, the taxpayer (after negotiations and conferences) received the sum of $98,000 from the State of Indiana for his business property. Respondent argues that a portion of this sum was consideration for loss of business and therefore taxable as ordinary income. Although there was some evidence supporting respondent's argument, we held for the taxpayer, stating, in part, as follows:

> This Court has held in similar situations involving involuntary conversions under threat of condemnation that a lump-sum purchase price is not to be rationalized after the event as a combination of factors which might properly have been separately stated in the contract if the parties had seen fit to do so. *Marshall C. Allaben*, 35 B.T.A. 327 (1937); *O. N. Bymaster*, 20 T.C. 649 (1953); *Lapham v. United States*, 178 F. 2d 994 (C.A. 2, 1950).
>
> \* \* \* \* \* \* \*
>
> The above-cited cases all involve attempts by taxpayers to apportion lump-sum amounts. However, the rule should apply with equal force to respondent's present attempt to label a part of the $98,000 received by petitioners as consideration for anticipated loss of profits. We accordingly find no basis in fact or in law for concluding that any part of the amount received by petitioners was other than consideration paid for the property taken. Cf. *Estate of Jacob Resler*, 17 T.C. 1085 (1952).

Moreover, there is no indication in this record that moving expenses were ever considered in the condemnation proceedings as an element of damages and, as far as we can determine, there is no certainty that such expenses would even be regarded by the State authorities as an element of damages under the relevant Indiana statutes. We sustain petitioner, Best Lock Corp., on this issue.

*Decisions will be entered under Rule 50.*