ESTATE OF HENRY N. BRAWNER, JR., ROGER J. WHITEFORD AND EDGAR N. BRAWNER, EXECUTORS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 82695. Promulgated November 16, 1937.

*Robert P. Smith, Esq.*, for the petitioners.
*C. A. Ray, Esq.*, for the respondent.

OPINION.

KERN: Issue (a) involves the right of decedent to deduct $400 paid in connection with the proposed purchase of an apartment house. The right to the deduction is premised upon the contention that decedent was extensively engaged in buying and selling real estate and in making loans secured by real property. The petitioners rely upon section 23 (a) of the Revenue Act of 1932, which provides for the deduction of all ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business.

As was said in the case of *Austin D. Barney et al., Executors*, 36 B. T. A. 446, "The decided cases touching upon what constitutes the carrying on of a business do not announce any comprehensive rule that can be readily applied to the varying facts that are presented in this class of cases." It is generally recognized that "those who take the position of passive investors, doing only what is necessary from an investment point of view" are not carrying on a trade or business within the meaning of this section of the revenue act. However, those who are actively engaged in the enterprises in which they are financially interested may be considered as carrying on a business. *Austin D. Barney et al., Executors, supra.* It is also true that a person actively and regularly engaged in buying and selling for profit, substantial quantities of securities, or considerable numbers of real estate tracts, will be considered as carrying on a business with regard to such trading. *L. T. Alverson*, 35 B. T. A. 482; *S. Rose Lloyd*, 32 B. T. A. 887. In some cases the result of the taxpayer having made investments is that the taxpayer thereafter is engaged in one business, or many businesses, depending upon the character of the investments made, all within the meaning of said section of the act. *Harvey H. Ostenberg et al., Administrators*, 17 B. T. A. 738.

In the instant case decedent had in the year 1928 the sum of $1,-000,000 derived from the dairy and dairy products business available for investment, and from that date to and including the taxable year 1932 he invested approximately that amount in real estate and in real estate loans, having purchased during those years 174 pieces of real estate, but selling only one piece and exchanging one piece without gain or loss. In 1932 the gross rentals received by him amounted to $21,786.46. We must conclude from these facts that he was not engaged in the business of buying and selling real estate as a real estate broker, and, further, that he was engaged during these years in the business of managing rental property purchased by him as an investment.

The deduction claimed by him, however, and involved in this issue of the instant case, is not an item properly connected with his business of managing rental properties owned by him, but is, on the

other hand, an item of expense incurred by him incident to a proposed investment; that is, a contemplated purchase by him of additional rental property. Therefore, we must conclude that it was not an ordinary and necessary expense paid or incurred during the taxable year in carrying on a trade or business, and as to this issue, we approve respondent's determination.

## Issue (b).

The attorney fees which are claimed as a deduction grew out of the litigation of decedent's tax liability in 1921, 1922, and 1923. During these years he was engaged in operating the milk and dairy business as a sole proprietorship. There can be no doubt that decedent was engaged in that business, and we are satisfied that the sum of $4,257.85 was paid out as attorney fees by decedent during the taxable year. In our opinion, this expenditure grew out of and proximately resulted from the milk and dairy business carried on by decedent and is deductible as an ordinary and necessary expense of that business. *Caroline T. Kissell*, 15 B. T. A. 1270; *Kornhauser* v. *United States*, 267 U. S. 145. Cf. *First National Bank of Skowhegan, Maine*, 35 B. T. A. 876, and cases cited.

## Issue (c).

The amount of the depreciation deduction to which decedent is entitled depends upon the value of the improvements at 1415 K Street, N. W., since the life of the building is not in dispute. Decedent valued the building at $125,000; the respondent valued it at $69,447.90, thereby reducing decedent's deduction for depreciation $1,108.21, and increasing his rental income by the same amount.

Respondent's determination being prima facie correct, decedent was under obligation to overcome this valuation by proving the value of the improvements in a different amount. His proof consisted of the testimony of his assistant, who described the building and the method used in valuing it. This witness testified that his allocation of cost to the improvements was based upon a personal inspection of the property in August 1931, upon consideration of the income-producing ability of the property, and upon the amount of the first trust. In order to support the opinion of this witness counsel endeavored to qualify him as an expert in valuing properties. We are not persuaded that his experience would justify us in considering him to be an expert or in relying on his valuation. Upon this issue we, therefore, determine that decedent did not maintain the burden of proof, and respondent's valuation and computation of depreciation will be adopted.

*Issue (d).*

Decedent has asserted his right to a further deduction as to 1932 income, either as a bad debt or as a loss. In the petition a slightly larger deduction is claimed as a loss, $21,558.12, or, in the alternative, that the amount is deductible as a bad debt. In his brief decedent reversed positions and contended that the deduction claimed, $21,530, is a bad debt, or, in the alternative, is a loss.

A brief summary of the pertinent facts will tend to clarify this issue. Decedent loaned $46,000 to McKeever & Goss on second trust notes and later advanced to them the sum of $4,103.33. Upon default, the makers of the notes and their endorser, R. L. McKeever, were sued and judgment was obtained for $27,680, including interest. The judgment could not be executed because of the bankruptcy of the individual and the failure of the firm without assets. Being unable to collect the judgment, decedent claimed that the difference between the judgment obtained and credits against it, of $4,000, which was not loaned, and of $1,250, an amount collected after judgment, represent a bad debt, or the loss sustained.

With regard to decedent's contention that this proposed deduction should be allowed as representing a bad debt, respondent contends that there was no proper charge-off thereof made by decedent within the taxable year, as required by section 23 (j) of the Revenue Act of 1932.

When decedent crossed out the title "McKeever & Goss" on the account involved herein, and entered in pencil the title "Real Estate 1415 K Street, N. W.", transferred the account from the notes and accounts receivable portion of his ledger to the real estate section thereof, and made the notation "Building bought in for $32,500, July 1931" and "Judgment for difference against R. L. McKeever worthless, bankrupt, no assets 1932", it is our opinion that a proper charge-off of the account against McKeever & Goss, carried on decedent's books was accomplished, conforming to the rules laid down in the following cases: *Thomas J. Avery*, 5 B. T. A. 872; *George H. Fraser*, 6 B. T. A. 997; *O. S. Stapley Co.*, 13 B. T. A. 557; *Poel & Kelly, Inc.*, 19 B. T. A. 1317; *Jones* v. *Commissioner*, 38 Fed. (2d) 550; *Stevenson* v. *Commissioner*, 43 Fed. (2d) 348.

It would seem clear that decedent, by the actions and notations mentioned above, and more fully set out in the findings of fact herein, evidenced the ascertainment of worthlessness of this account substantially as of the date of such ascertainment and within the taxable year, and effectively eliminated his claim against McKeever & Goss as an asset. However, article 23 (k)-3 of Regulations 94 provides as follows:

If mortgaged or pledged property is lawfully sold (whether to the creditor or another purchaser) for less than the amount of the debt, and the mortgagee or pledgee ascertains that the portion of the indebtedness remaining unsatisfied after such sale is wholly or partially uncollectible, and charges it off, he may deduct such amount (to the extent that it constitutes capital or represents an item the income from which has been returned by him) as a bad debt for the taxable year in which it is ascertained to be wholly or partially worthless and charged off. * * *

In view of this provision, it is therefore apparent that decedent could deduct as a bad debt only that portion of the worthless judgment against McKeever & Goss which constituted capital. Since there is no evidence in the record that any portion of the judgment representing interest has been reflected in decedent's income tax returns, the amount of his capital represented in the account against McKeever & Goss is the sum of $46,000, plus $11.15 protest fees, plus the advancement of $4,103.33. To be credited on this is the sum of $1,250 received by him on this account by means of an attachment, November 7, 1932, and also the sum of $32,500 which is the amount for which the mortgaged property was sold.

It is, therefore, our conclusion on this issue that the claim of decedent for a deduction as a bad debt should be allowed in the sum of $16,364.48.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

---

LEECH, dissenting: I dissent on the first point. It seems to me this record establishes the fact that the petitioner, during the taxable year, was in the business of owning and operating real estate; that as an ordinary and necessary expense of that business, he paid, during that year, the disputed $400, and, accordingly, is entitled to its deduction under the Revenue Act of 1932, section 23 (a).

STERNHAGEN and ARUNDELL agree with this dissent.