**J. W. YORK and Mary P. York, Petitioners,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 7677.**

United States Court of Appeals Fourth Circuit.

Argued Oct. 14, 1958.

Decided Nov. 6, 1958.

N. A. Townsend, Jr., Raleigh, N. C. (Poyner, Geraghty, Hartsfield & Townsend, Raleigh, N. C., on the brief), for petitioners.

Wayne G. Barnett, Atty., Dept. of Justice (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, I. Henry Kutz and C. Guy Tadlock, Attys., Dept. of Justice, Washington, D. C., on the brief), for respondent.

Before HAYNSWORTH, Circuit Judge, and BARKSDALE and BRYAN, District Judges.

ALBERT V. BRYAN, District Judge.

Recovery of the income taxes now sought by petitioners York should be decreed. The sum upon which the taxes were assessed was clearly deductible under sec. 23(a), Internal Revenue Code of 1939, as "ordinary and necessary expenses paid or incurred during the taxable year in carrying on * * * [his] trade or business". 26 U.S.C.A. 1952 ed. § 23.

The Tax Court reasoned, to the contrary, that the sum in question—an expenditure for the cost of an expert survey to determine the potentiality of nearby land for industrial development—could not be an operating cost in the taxpayer's business, because his business was residential and commercial real estate, while the outlay related to industrial real estate, and hence was an exploratory expenditure to determine whether he should venture into a new line of business. This conclusion is premised on findings we think clearly erroneous and upon an application of the tax statute we think mistaken.

During the tax year here involved, 1952, and in years prior taxpayer York (his wife now petitioning only because she had joined in the tax return) was

engaged in and about Raleigh, North Carolina in the development, management and improvement of real estate generally, but not including industrial properties. Between 1945 and 1952, individually and as an officer of his operating corporation, he quite successfully developed and promoted Cameron Village, in Raleigh, consisting of some 560 rental apartment units surrounding a shopping center of 53 retail commercial outlets occupying some 425,000 square feet of ground.

Because of this success in Cameron Village he was solicited by an officer of Raleigh Development Center to take over the direction of the affairs of that corporation, which had been organized to promote the industrial development of Raleigh and, especially, RDC's acreage there. A percentage stock interest in the corporation, plus a commission on such land dispositions as he might effect was proposed as his compensation. Aware of his inexperience in purely industrial land, he conditioned his acceptance of the proffered employment upon the procurement of an expert survey of the industrial possibilities of this land.

For this purpose he insisted upon the employment of a reputable and generally accepted institute of research, one which he had retained in preparation for the Cameron Village enterprise. This organization had a division for industrial studies and a like advisory council for community builders. Previously the taxpayer had been counseled by the latter; now he engaged the other council. The upshot was that the institute, carefully considering the factors bearing on the area, reported favorably upon its suitability for industry. RDC and York having originally agreed to divide equally the fee of the institute, taxpayer in 1952 paid his share, amounting to $5000, the deduction now claimed.

True, taxpayer never closed the agreement with RDC, but other acts of the taxpayer demonstrate, as emphatically as would have his acceptance of employment from RDC, that the institute's report was a current business expense. In 1952, after the institute had reported, the taxpayer bought one half of the capital stock of Raleigh Development, and from that time on, in 1952 and subsequent years, the taxpayer otherwise dealt actively in industrial sites, obviously adopting and applying his advisor's judgment in his work.

Before 1952 his activities had included, admittedly, the handling not only of residential but of commercial real estate as well, and both in considerable magnitude. Obviously the divergency between concentrated commercial development and industrial development is neither wide nor radical. Indeed, the line of demarcation between them is obscure. Taxpayer's attention to industrial land in 1952 was but the cultivation of a sector already within the compass of his field. The activity was still intramural —it could not, under the evidence, be classed as a new pursuit, apart from his general occupation. The two were one in his vocation. In taking the opposite view, the Tax Court breaks with the intendment of the statute and is not supported by McDonald v. Commissioner, 1944, 323 U.S. 57, 65 S.Ct. 96, 89 L.Ed. 68, or the other authorities cited by the appellee.

Again, the fee paid to the institute was clearly an "ordinary and necessary" business expense. Because earlier it had justified itself in Cameron Village, the taxpayer was warranted in considering it worthwhile whether or no the RDC proposition materialized. Actually, the payment was for professional consultation and advice on a subject well within the calling of the taxpayer. That another shared the total cost did not alter its character; that was but an economy. Here, as well, we feel the Tax Court cannot be sustained. Its order must be overturned and the deduction allowed.

Reversed.