T. R. Ewart and Rhude Ewart v. Commissioner.
Ewart v. Commissioner
Docket No. 915-62.
United States Tax Court
T.C. Memo 1966-17; 1966 Tax Ct. Memo LEXIS 264; 25 T.C.M. (CCH) 96; T.C.M. (RIA) 66017; January 21, 1966
*264 Business expenses: Deductibility: Expenses incurred preliminary to carrying on a business. - The petitioner, who was engaged in the public relations business, also engaged in other business activities. Planning to manufacture and sell a candy-dispensing toy, he employed an artist to make preliminary sketches, had models of the toy made and apparently incurred other expenses in connection with the venture. He began production and sale of the toy in 1958 but abandoned the venture in 1959 because of mechanical defects. The Court found that the evidence was insufficient and vague as to whether the taxpayer carried on any toy business in 1957, the year in which he claimed deductions for the preliminary expenses. The Court felt that the expenses were not made in investigating, exploring and promoting a new business. There was no clear proof of what amounts were expended. William Andress, Jr., 3200 Southland Center, Dallas, Tex., for the petitioners. Willard A. Herbert, for the respondent. HOYT
Memorandum Opinion HOYT, Judge: Respondent has determined a deficiency in petitioners' income tax for 1957 in the amount of $2,558.57. The only question in issue is the deductibility of certain claimed business expenses. Petitioners are husband and wife and are residents of Midland, Texas. Their return for 1957 was filed with the district director of internal revenue at Dallas, Texas. In 1957, and for a number of prior years, T. R. Ewart, hereinafter called petitioner, was engaged in the public *266 relations business. During all of 1957 he was employed in that capacity by Downtown Improvement and Property Owners Association, hereinafter referred to as the association, on a fee basis. He occupied an office which was furnished rent free by the association in the Texas Bank and Trust Company Building in Dallas. In 1957 petitioner received fees from the association amounting to $18,000 and reimbursement for travel and other incidental expenses in the amount of $642.70. His services on behalf of the association required him to travel to all sections of the United States. Under his employment contract with the association, petitioner was permitted to engage, and did engage, in other business activities. Among such activities, since about 1950, were the purchase and operation of a public recreation camp at Lake Dallas and the promotion of a number of products including a hot sandwich vending machine, a battery-powered posthole digger, a magnetic flux to protect fruit orchards from freezing, a light plastic building material, and others. Petitioner also printed and distributed a concordance known as "Bible & Business." The Lake Dallas property consisted of land and several camp buildings. *267 Petitioner endeavored to rent out the premises to various clubs and organizations for recreational activities. The venture was not successful and after about three years the property was sold by petitioner in the latter part of 1957. Petitioner made his residence on the property during 1957 up until the time of its sale and maintained an office there. He commuted between that office and his downtown Dallas office by automobile. He had one automobile which he used chiefly for business purposes and one used for social purposes. Petitioner became interested in the hot sandwich vending machine and began negotiating with its owners for a franchise in the State of Texas in 1957. He later acquired the franchise which he registered in Dallas County, Texas, in May 1958. He purchased some of the vending machines at a cost of $2,500. In May 1957, he paid out $75 for investigative services in connection with the acquisition of the franchise and machines. However, before petitioner had begun actually operating the business, the franchise was revoked by the owners and petitioner's money was refunded. In September 1957, petitioner engaged an artist to make some preliminary sketches of a plastic *268 candy-dispensing toy which he planned to manufacture and sell. He paid the artist $150 in September of 1957. Two handmade models of this toy were acquired at a cost of $800. The device was a combination of a bunny rabbit and a chicken. It had a mechanism which when operated laid a candy egg. It was intended chiefly as an Easter novelty to be handled by candy shops and department stores. It was given the trade name of "Bunnyken." Production and sale of the Bunnyken were commenced in 1958 but due to certain mechanical defects the venture was abandoned in 1959. In his 1957 joint income tax return petitioner reported "Fee and Other Income $18,293.63" and claimed expense deductions of $6,682.06 consisting of the following items: Interest
$ 67.55
Telephone & Telegraph
637.33
Promotion & Entertainment
578.24
Traveling - R.R. & Airplane
987.28
Hotel & Tips
517.98
Taxi Fare and Meals
545.00
Auto Expense - 13750 Miles at 10"
1,375.00
Business Insurance
333.69
Miscl. Expenses
561.04
Safety Deposit Box
7.70
Depreciation
1,071.25 He also reported a net capital gain of $23,604.33 which included a gain of $23,730.37 on the sale of the Lake Dallas *269 property referred to above. The return showed a taxable income of $20,231.04. Neither petitioner's 1957 tax return nor other evidence of record indicates any other income from other business activities that year. In his notice of deficiency, respondent disallowed $6,388.43 of the business expense claimed on the return and allowed $293.63. Respondent stated in his notice of deficiency: It is determined that the $6,682.06 claimed on your return as business expenses is allowable to the extent of $293.63 and that the remaining $6,388.43 is not allowable for lack of proof either as to amount, or that the sums claimed would constitute ordinary and necessary business expenses under the internal revenue laws. In his amended petition filed in this proceeding petitioner alleges error in respondent's determination as follows: (a) Disallowance of $3184.43 business expenses attributable to the "Bunnykin" business in procuring sources of manufacture and supply for operations and sales actually beginning in 1959. (b) Disallowance of $2069.34 business expenses incurred in negotiating a written franchise contract actually signed in 1958 for automatic hot sandwich vending machines, subsequently *270 sold by taxpayers. (c) Disallowance of $728.41 in general business expense including insurance, interest, depreciation, and miscellaneous amounts, for the several varied business interests of the taxpayers. * * * The issues before us as presented in petitioner's amended petition, and respondent's answer thereto, are the deductibility of expenditures of $3,184.43 attributable to the Bunnyken venture, $2,069.34 attributable to the sandwich vending machine and $728.41 of general business expenses. As to the expenditures related to the Bunnyken and the sandwich vending machines respondent's primary contention is that they were not expenses "paid or incurred * * * in carrying on any trade or business" within the meaning of the statute (section 162, Internal Revenue Code of 1954) but were expenditures made in investigating, exploring and promoting new business ventures which came into existence, if at all, after the taxable year 1957. This contention must be sustained. The burden was on petitioner to show the nature of his businesses in 1957, the nature and amount of the expenses claimed and the proximate relationship between such expenses and the alleged businesses. *271 eugene H. Walet, Jr., 31 T.C. 461, 470 (1958), affd. per curiam 272 F. 2d 694 (C.A. 5, 1959). At most, the evidence here vaguely establishes some expenditures for what might be called investigation of a possible business venture to be started at some future time, if at all. The expense deductions permitted under the statute are for expenditures incurred in carrying on an established, going business. Expenditures incurred in investigating and promoting a potential new business which does not come into being and is not actually carried on during the taxable year are not deductible as ordinary and necessary business expenses. Eugene H. Walet, Jr., supra; John F. Koons, 35 T.C. 1092 (1961). In the Koons case we said (at 1101): It is clear that the statutory phrase "trade or business" presupposes an existing business with which the taxpayer is directly connected. Expenditures made in investigating a potential new trade or business, or preparatory to entering into such business, do not, in our opinion, qualify for the application of section 174(a)(1). The principle is recognized in our repeated disallowance of such expenditures. See *272 Dwight A. Ward, 20 T.C. 332, 343 (1953), affirmed on another issue 224 F. 2d 547 (C.A. 9, 1955); George C. Westervelt, 8 T.C. 1248, 1254 (1947); Henry G. Owen, 23 T.C. 377, 381 (1954); Morton Frank, 20 T.C. 511, 513-514 (1953); Eugene H. Walet, Jr., 31 T.C. 461, 471 (1958), affd. 272 F. 2d 694 (C.A. 5, 1959). See also McDonald v. Commissioner, 323 U.S. 57 (1944). Among the cases on which petitioner seems to place his principal reliance are Doggett v. Burnet, 65 F. 2d 191 (C.A.D.C., 1933), reversing 23 B.T.A. 744; 379 Madison Avenue, Inc. v. Commissioner, 60 F. 2d 68 (C.A. 2, 1932), reversing 23 B.T.A. 29; and York v. Commissioner, 261 F. 2d 421 (C.A. 4, 1958), reversing 29 T.C. 520. In the Doggett case the court reversed our ruling that the distribution and sale of certain religious publications did not constitute a business carried on for profit by the taxpayer and that the expenses so incurred were not deductible as business expenses under section 214(a)(1) of the Revenue Act of 1926. In its Opinion *273 the court said that the test to be applied: is whether or not the person engaged in a legitimate enterprise shows a willingness to invest time and capital on the future outcome of the enterprise, whether it be successful or unsuccessful. In the present case appellant for years has been devoting her time and capital to this enterprise, conscientiously believing that in the end it will prove profitable. * * * The court emphasized that the taxpayer was actually engaged during the taxable year and prior years in the business of publishing and disseminating the books. In the Madison Avenue case the court held, reversing on this issue 23 B.T.A. 29, that the taxpayer was entitled under section 204 of the Revenue Act of 1921 to carry forward to subsequent years a net operating loss for 1922 resulting in part from the deduction in 1922 of certain expenditures including legal fees, rent, taxes, and interest relating to an office building still in process of construction in that year. In York v. Commissioner, supra, the court reversed this Court's ruling in 29 T.C. 520, that a taxpayer previously engaged in carrying on a general real estate business *274 was not entitled to the deduction under section 23(a) of the 1939 Code of the expense of having surveys made to determine the potential of certain lands for industrial development. In holding that the proposed venture into the industrial real estate field was not a new business, the court said: Before 1952 his activities had included admittedly, the handling not only of residential but of commercial real estate as well, and both in considerable magnitude. Obviously the divergency between concentrated commercial development and industrial development is neither wide nor radical. The facts here are quite different from those in the cited cases. In his brief petitioner states that: It should be borne in mind that the expenses incurred in connection with Bunnykens were in connection with locating molds and dies, and persons who could make them, and who could utilize them in production of the product, and arranging for such production, which actually began in the subsequent year, * * * Petitioner does not and could not reasonably contend that the preparatory expenditures relating either to the Bunnykens or the sandwich vending machines had any connection with his public relations *275 work or any other business in which he was regularly engaged in 1957. Petitioner makes no reference to the many cases decided by this Court, including those cited above which support respondent's position here. His contention seems to be that the position taken by this Court as to the nondeductibility of expenditures of the nature of those involved, as reflected in the above-cited cases, is erroneous. With this we cannot agree. A further reason why the deductions sought by petitioner must be disallowed is that the amounts set out in his amended petition are not substantiated by the evidence of record. There is lacking any competent proof of just what amounts were expended in connection with the promotion of either the sandwich vending machine or the Bunnyken. Petitioner produced a number of canceled checks, hotel bills and airline and train travel tickets, some of which were identified as having a general business purpose. However, petitioner was not able to relate them to any particular business. Petitioner's testimony as to those matters was for the most part vague and incomplete, and on the record before us we cannot say that any of the claimed expenditures qualify for deduction. *276 The evidence likewise fails to identify the other items making up the $728.41 of "General Expenses" claimed. We are satisfied that petitioner was actually engaged in operating the Lake Dallas property as a business venture and in so doing he no doubt incurred some deductible expenses. However, we have no evidence on which we can base even an estimate or approximation of such expenses. We have only petitioner's vague and general testimony, such as that one of his automobiles was used for business purposes only and that a certain portion of his telephone calls were on business matters. To the extent that the automobile was used by petitioner for commuting from Lake Dallas where he made his residence to his office in downtown Dallas, they were personal nondeductible expenses. Respondent has allowed petitioner business expenses of $293.63 and on the evidence of record we cannot find that the Commissioner erred or that petitioner's allowable expense deductions were in excess of that amount. Decision will be entered for the respondent.