PATRICK L. O'DONNELL AND LADONA S. O'DONNELL, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2924–73. Filed September 17, 1974.

*Patrick L. O'Donnell,* pro se.
*Paul G. Topolka,* for the respondent.

TANNENWALD, *Judge:* Respondent determined deficiencies in petitioners' income taxes of $502.98 in 1969 and $122.08 in 1970. The two issues raised in this proceeding are: (1) Whether petitioners are entitled, under section 162(a),[1] to deduct law school expenses incurred by petitioner Patrick L. O'Donnell and (2) whether travel expenses incurred to investigate the possible acquisition of a certain building are deductible under section 162(a)(2) or 165(c).

FINDINGS OF FACT

### General

Most of the facts have been stipulated. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference.

Petitioners are husband and wife who, at the time they filed their petition herein, resided in Evanston, Ill. They filed their joint Federal income tax returns for the calendar years 1969 and 1970 with the Internal Revenue Service Center, Kansas City, Mo. Since LaDona S. O'Donnell is a petitioner herein only because she filed joint returns with her husband, the designation "petitioner" will hereinafter refer only to Patrick L. O'Donnell.

---

[1] Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and applicable to the years involved herein.

## Issue 1. Educational Expenses

### FINDINGS OF FACT

Petitioner graduated from the University of Idaho in June 1957 with a degree in accounting and became a certified public accountant shortly thereafter. Prior to and including the years involved herein, petitioner worked full time for Arthur Andersen & Co., a certified public accounting firm, as a tax accountant in their tax department. His duties consisted of, but were not limited to, preparing and reviewing tax returns, researching tax questions, dealing with internal revenue agents, and engaging in various aspects of tax planning.

A substantial majority of accountants in the tax department of Arthur Andersen & Co. have law degrees, but the basic educational requirement for employment is a bachelor's degree. Arthur Andersen & Co. encouraged, but did not require, their employees to study for law degrees.

Petitioner attended Loyola University Law School at night and pursued a general course of study from September 1966 to June 1970, when he received his law degree. During the last 2 years of his 4-year program (those presently before us), petitioner took two tax courses, estate planning and income taxation, and several business law courses. In 1970, petitioner passed the Illinois State bar examination and became a member of the Illinois bar. Petitioner pursued his legal education in order to improve his accounting and tax skills and at no time, prior to the trial herein, has he either practiced or intended to practice law.

Since February 1971, petitioner has been employed in the tax department of Allstate Insurance Co. The tax department is separate and distinct from Allstate's law department and employs lawyers as well as nonlawyers.

Respondent disallowed in full petitioner's deductions of $1,176.45 and $628.61 claimed, respectively, on his 1969 and 1970 joint returns as expenses for books, tuition, etc., while attending law school.

### OPINION

The question before us can be simply stated: Can a practicing accountant, who pursues a legal education to improve his accounting skills and obtains a law degree, deduct the expenses of such education under section 162(a) which permits a deduction for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." The applicable regulation is section 1.162–5(b)(3) which provides that a taxpayer may not deduct expenditures for "education which is part of a program of study being

pursued by him which will lead to qualifying him in a new trade or business." Examples (1) and (2) of that regulation specifically deny a deduction to an accountant who attends law school and receives a law degree. These regulations have been sustained as a valid exercise of respondent's rule-making authority as applied to fact situations virtually identical with that involved herein. *Morton S. Taubman*, 60 T.C. 814 (1973); *Jeffry L. Weiler*, 54 T.C. 398 (1970). Cf. *William D. Glenn*, 62 T.C. 270 (1974). That petitioner neither practiced nor intended to practice law during the year at issue is irrelevant. That fact was pertinent under the primary-purpose test contained in respondent's earlier regulations, but petitioner cannot elect the benefit of those regulations since his claim relates to taxable years commencing after January 1, 1968.[2] *Morton S. Taubman, supra;* Rev. Rul. 68-191, 1968-1 C.B. 67. The objective test incorporated in the existing regulations applies.

Petitioner argues that because he was already a member of the "tax accounting profession," to which both lawyers and accountants belong, he had already met the minimum education requirements of his profession and that law school merely maintained and improved his skills. On this theory, he argues that the shift from accountant to lawyer is indistinguishable from the shift from psychiatrist to psychoanalyst, see sec. 1.162–5(b)(3)(ii), example (4), Income Tax Regs., or from a dentist engaged in general dental practice to an orthodontist, see Rev. Rul. 74–78, 1974–1 C.B. 44. Even if we assume for purposes of petitioner's argument, that a "tax accounting profession" including both lawyers and accountants does exist (separate and distinct, of course, from the legal and accounting professions), petitioner must still fail. As an attorney representing his clients, he would be qualified to perform tasks far greater and more diverse than he could as an accountant. Moreover, now that he is an attorney, petitioner is free to branch off into any area of legal specialty or into a general practice. These possibilities make it abundantly clear that petitioner, by attending law school, has qualified himself for a new trade or business and his expenses are nondeductible. *Jeffry L. Weiler*, 54 T.C. at 401–402. Cf. *Ronald F. Weiszmann*, 52 T.C. 1106, 1110 (1969), affirmed per curiam 443 F.2d 29 (C.A. 9, 1971).

Petitioner, anticipating our conclusion that his expenses are specifically nondeductible under the regulations, makes two alternative arguments. First, petitioner argues that if he were not in a degree program the cost of his two tax courses would clearly be deductible and, that if the regulations are deemed to make this case nondeductible, they

---

[2] *Walter T. Charlton*, T.C. Memo. 1964–59, *Frank Kilgannon*, T.C. Memo. 1965–118, and *Charles W. Berry*, T.C. Memo 1971–110, relied upon by petitioner, were decided under the earlier regulations.

constitute an invalid interpretation of the statute. But, petitioner cannot escape the fact that a law degree is a prerequisite to qualify one to enter the legal profession in Illinois [3] and represents one step along the path of entering the new trade or business of being an attorney. Credit for the two tax courses enabled petitioner to satisfy the requirements for obtaining his law degree and, in the context of this case, their status is undistinguishable from all of the other courses which petitioner took and which also satisfied those requirements. Moreover, the record herein furnishes no basis for determining what portion of petitioner's expenditures were allocable to those courses.

Petitioner's second attack on respondent's position is that it discriminates in favor of teaching and other "favored" professions in violation of the due process clause of the fifth amendment. Petitioner has, however, introduced no evidence to show that teachers are actually in trades or businesses different than guidance counselors and principals, that psychiatrists are in different trades or businesses than psychoanalysts, or that dentists are in trades or businesses distinct from orthodontists. Consequently, we have no basis for considering whether the alleged discrimination in fact exists, let alone whether, if it did, it would reach the level of constitutional protection. Cf. *Morton S. Taubman*, 60 T.C. at 819.[4] Moreover, a finding of unconstitutional discrimination would not necessarily enable petitioner to prevail; the consequence might be to deny the deduction both to petitioner and to the favored professions. See *Moritz* v. *Commissioner*, 469 F. 2d 466, 470 (C.A. 10, 1972), reversing 55 T.C. 113 (1970).

We hold that respondent's disallowance of the claimed deductions for educational expenses should be sustained.

### Issue 2. Travel Expenses

#### FINDINGS OF FACT

In August 1969, following preliminary discussions in Chicago, Ill., petitioner made a 2-day trip to Miami, Fla., to investigate the acquisition of a building located there. Petitioner intended to acquire the building from its owners and thereafter lease it back to them. Immediately thereafter, he decided, based on the cost of the building, its condition and location, the yield on the lease, and other factors, not to proceed with the acquisition. On the trip, petitioner incurred expenses

---

[3] In Illinois, every applicant for admission to the bar must have a "first degree in law from a law school approved by the Board of Law Examiners." Ill. Ann. Stat. ch. 110A, sec. 703 (1968).

[4] Other decisions have indicated that no unconstitutional discrimination is involved. *Weiszmann* v. *Commissioner,* 443 F. 2d 29, 30 (C.A. 9, 1971), affirming 52 T.C. 1106 (1969) ; *John K. Lunsford,* T.C. Memo. 1973–17 ; *Murry Jerome Wright,* T.C. Memo. 1973–8. See also *John C. Ford,* 56 T.C. 1300, 1312 (1971) (dissenting opinion).

of $252.50 for travel, meals, and lodging, which respondent disallowed.

Petitioner owned no other property, either real or personal, in Miami during the years in issue. He did own and lease, in his individual capacity, a house with an adjacent building containing two apartments located in Las Vegas, Nev. In addition, petitioner and his brother, Tim O'Donnell, a resident of Las Vegas, owned, as tenants in common, a 4½-acre plot in Las Vegas, containing three small commercial buildings and seven unimproved or nominally improved lots. Petitioner and his brother shared equally in the income from and expenses of this property.

### OPINION

The principal issue before us is whether petitioner's travel expenses for a trip to Miami to investigate the possible acquisition of rental property constituted "ordinary and necessary expenses paid * * * in carrying on a trade or business" within the meaning of section 162(a). Resolution of the question turns upon the answer to the question: What was petitioner's trade or business? Petitioner contends for an umbrella concept pursuant to which his ownership of rental property in Las Vegas is equated with the trade or business of owning and operating rental property without limitation. Respondent counters with the assertion that, whatever may be the proper characterization of petitioner's activities in Las Vegas, they did not encompass the abortive effort to acquire rental property in Miami, Fla. Consequently, respondent contends that petitioner's expenditures were at most expenses of investigating the possibility of entering into a new trade or business and as such not deductible.[5]

We have carefully considered the evidence before us (almost all of which was stipulated) and have concluded that petitioner's umbrella concept should, at least under the circumstances of this case, be rejected. We cannot find that level and scope of activity on petitioner's part which would enable us to conclude that he was generally in the trade or business of owning and operating rental property on a broad scale. Cf. *Estate of Henry N. Brawner, Jr.*, 36 B.T.A. 884, 890–891 (1937). In *York* v. *Commissioner*, 261 F. 2d 421 (C.A. 4, 1958), reversing 29 T.C. 520 (1957), a taxpayer who was concededly a developer and promoter of real estate generally (other than industrial property) in Raleigh, N.C., was allowed to deduct the expenses of investigating the possible development of an industrial site also in Raleigh. In so holding, the Court of Appeals emphasized the "considerable magnitude" of the taxpayer's activities in both residential and commercial

---

[5] Respondent does not question the amount or the purpose of the expenditures, e.g., by contending that petitioner's real purpose was travel to a resort area for personal pleasure. See *Travis Smith*, 60 T.C. 988, 993 (1973).

real estate, the "intramural" nature of the industrial site development, and the fact that "the divergency between concentrated commercial development and industrial development is neither wide nor radical." See 261 F. 2d at 422. That case is clearly distinguishable on its facts.[6]

We see no need to articulate any all encompassing, precisional definition of when an integrated trade or business exists, either functionally or geographically. Compare *Best Universal Lock Co.*, 45 T.C. 1, 12–13 (1965). The type of determination required herein is a factual one and can best be made on a case-by-case basis. Concededly, this may involve the difficult task of linedrawing in order to dispose of a variety of situations on both sides of what may remain an imprecise line; such an eventuality is not unusual to the workings of the judicial process. See and compare *Estate of Mary Cotton Wood*, 39 T.C. 919, 924 (1963). Our conclusion herein is that petitioner falls on the wrong side of the line.

Nor can petitioner draw any sustenance from section 165 in order to sustain an abandonment loss. Our earlier rationale precludes a holding that petitioner's loss was "incurred in a trade or business" under section 165(c)(1) and the fact that petitioner did no more than make a preliminary investigation without committing any funds to the Miami acquisition precludes any deduction for any loss "incurred in any transaction entered into for profit" within the meaning of section 165(c)(2). Compare *Morton Frank*, 20 T.C. 511, 514 (1953), with *Harris W. Seed*, 52 T.C. 880 (1969).

Respondent's disallowance of petitioners' expenses for travel to Miami is sustained.

*Decision will be entered for the respondent.*

---

[6] *James A. Warren,* T.C. Memo. 1968–193, relied upon by petitioner, is also factually distinguishable since we found that the taxpayer was generally in the cable salvage business. Neither party has adverted to the possibility of a deduction under sec. 212(1), presumably because this would be precluded under the limitations imposed by *McDonald* v. *Commissioner,* 323 U.S. 57, 62–63 (1944). See also *Morton Frank,* 20 T.C. 511, 514 (1953).