ROBERT E. DRURY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Drury v. Commissioner
Docket No. 10218-75
United States Tax Court
T.C. Memo 1977-199; 1977 Tax Ct. Memo LEXIS 238; 36 T.C.M. (CCH) 835; T.C.M. (RIA) 770199; June 29, 1977, Filed Robert E. Drury, pro se. W. Robert Abramitis, for the respondent. TANNENWALD
MEMORANDUM FINDINGS OF FACT AND OPINION TANNENWALD, Judge: Respondent determined a deficiency of $276.96 in petitioner's 1972 Federal income tax. The issues are whether petitioner, a university research associate, is entitled to employee business expense deductions in respect of (1) the cost of printing a scientific article and (2) the cost of mailing copies of a scientific publication containing one of his articles to members of the scientific community. FINDINGS OF FACT The stipulation of facts filed by the parties, together with the exhibits *239 attached thereto, is incorporated herein by this reference. Petitioner resided in Eggertsville, New York, at the time of filing his petition herein. He timely filed his 1972 Federal income tax return with the Internal Revenue Service Center, Andover, Massachusetts. From July, 1967, until June, 1972, petitioner was employed as a research associate at the New York Agricultural Experiment Station at Geneva, New York (hereinafter "Geneva Station"), a Division of the New State College of Agriculture and Life Sciences, a Statutory College of the State University, Cornell University, Ithaca, New York. He had no teaching responsibilities. While at the Geneva Station, petitioner was responsible for laboratory research concerning nucleic acid and protein metabolism in seed dormancy and germination in the field of plant physiology. Petitioner was expected to prepare manuscripts concerning his research pursuits and, in the normal course, to secure publication of the same in scientific journals. Publication of scientific articles was important both in terms of filling his present job responsibities and in terms of advancement to a senior research associate position or further to the *240 professorial career ladder. From 1967 through 1972, twelve articles either authored or co-authored by petitioner were published in scientific journals. Articles accepted for publication by scientific journals are normally printed without any cost to the author. As a result of an article by petitioner published in 1969 and the response thereto, petitioner developed a lengthy manuscript on the role of calculus in the understanding of plant physiology. He submitted this piece for publication to the same journal in which his 1969 article had appeared, but it was rejected because it was critical of the scientific methodology espoused by one of the reviewers who was considered an authority in the field. Petitioner refined his thoughts and rewrote and added to the manuscript several times. He submitted the piece for publication several more times, but it was similarly rejected. Because petitioner recognized that his job responsibilities included the dissemination of his research findings and because he could not secure publication of his manuscript in a scientific journal, he decided to finance the printing of the same as a scientific monograph titled "Plant Physiology in Wonderland *241 and the Discovery of Calculus." Petitioner first approached a private printer in or about April, 1971. The monograph was printed in October, 1971. In connection with such printing, petitioner incurred the following costs which he paid in 1972: Printing 1,000 copies
$1,285.00
4 cuts
42.70
Author's alterations
44.85
10 copies bound
39.50
Total cost
$1,412.05
The Geneva Station has its own publication called SEARCH, which carried an article by petitioner, "Understanding Plant Physiology and Other Branches of Mathematics" in the February, 1972, issue. During 1972, petitioner spent $45.60 to mail copies of this issue of SEARCH to foreign members of the American Society of Plant Physiologists. As a general rule, the Geneva Station assumes the expense of mailing copies of SEARCH at the author's request. OPINION We note at the outset several aspects of the instant case which narrow considerably the focus of the principal issue before us, namely, whether petitioner's expenditures for printing his scientific monograph constitute a deductible business expense. There is no question that the monograph had substantive scientific merit and that it bore directly *242 on the fabric of the research work for which petitioner was employed. Additionally, we are not confronted with the troublesome problem of an expense which has both business (section 162) and personal (section 262) overtones such as is so often involved in research related travel (compare, e.g., Brooks v. Commissioner,274 F.2d 96 (9th Cir. 1959), revg. 30 T.C. 1087 (1958); Davis v. Commissioner,38 T.C. 175 (1962); Cardozo v. Commissioner,17 T.C. 3 (1951); Rev. Rul. 63-275, 1963-2 C.B. 85); or educational expenses which merely improve one's skills in an existing trade or business as against preparing for entry or reentry into a trade or business, or qualifying for a new business (compare e.g., O'Donnell v. Commissioner,62 T.C. 781 (1974), affd. without published opinion 519 F.2d 1406 (7th Cir. 1975); Ford v. Commissioner,56 T.C. 1300 (1971), affd. per curiam 487 F.2d 1025 (9th Cir. 1973)). See also Wolfman, "Professors And The 'Ordinary and Necessary' Business Expense," 112 U.Pa. L. Rev. 1089 (1964). Finally, we are not asked to *243 consider the question whether petitioner's expenditures were capital in nature so as to preclude their current deductibility. Compare Welch v. Helvering,290 U.S. 111 (1933). See Primuth v. Commissioner,54 T.C. 374, 381-382 (1970) (concurring opinion). See also, Wolfman, supra.
Rather, respondent has staked out his position as to nondeductibility on the ground that petitioner's expenditures were neither "ordinary" nor "necessary" because publication of an article, such as is involved herein, was customarily accomplished on the basis of no cost to the author. We think that, under the circumstances of this particular case, respondent reads the "ordinary and necessary" requirement of section 162 too narrowly. We are satisfied that petitioner's employer expected (although it did not require) its research associates to communicate the results of their research. To be sure, petitioner's employer anticipated that such communication would be accomplished through publication in scientific journals without cost to the author. However, the facts herein indicate, albeit not with crystal clarity, that, with respect to the particular article in question, *244 the normal channel of communication was not available to petitioner because the article contained critical comment of a person who was in a position to control its acceptance for publication. Such being the case, petitioner's only viable alternative to discharge his reasonably perceived responsibility to disseminate the results of his work was to finance personally the publication thereof. In this respect, he was in a position not unlike a handicapped person who, because of his handicap, is required to incur an expense which nonhandicapped persons similarly situated would not customarily incur. Cf. Quinn v. United States, an unpublished opinion ( D. Md. 1976, 77-1 USTC par. 9369) (wife's travel expenses to accompany a diabetic business executive); see also Rev. Rul. 75-316, 1975-2 C.B. 54 (blind employee's payments to readers). On the basis of the record herein, we hold that petitioner has satisfied his burden of proof that the expenditures for publication of his article were ordinary and necessary business expenses within the meaning of section 162. The second issue before us is the deductibility of petitioner's postage expense for mailing to scientists *245 abroad copies of the issue of SEARCH containing his article "Understanding Plant Physiology and Other Branches of Mathematics." SEARCH was published by petitioner's employer. It is well settled that reimbursable expenses for which a taxpayer fails to request reimbursement are not necessary expenses and, therefore, not deductible by such taxpayer. See Coplon v. Commissioner,277 F.2d 534, 535 (6th Cir. 1960), affg. T.C. Memo. 1959-34; Kennelly v. Commissioner,56 T.C. 936, 943 (1971), affd. without opinion 456 F.2d 1335 (2d Cir. 1972). Respondent introduced the testimony of the director of the Geneva Station that, for authors with articles appearing in SEARCH, the station mailed copies of the publication within the United States upon request of the author and at no cost to him and that, if the author wanted copies mailed to foreign countries, the appropriate department at the station "picks up the expense." The director testified further that, to the best of his knowledge, petitioner never requested payment for his mailings to foreign countries. At the very least, it was incumbent upon the petitioner, who had the burden *246 of proof (Rule 142, Tax Court Rules of Practice and Procedure), to offer some explanation for not seeking the reimbursement to which he was apparently entitled. This he did not do and, accordingly, we sustain the respondent's determination in respect of this issue. Decision will be entered under Rule 155.