RAJENDAR K. SINGAL AND PROMILA SINGAL, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Singal v. Commissioner
Docket No. 15822-81.
United States Tax Court
T.C. Memo 1982-626; 1982 Tax Ct. Memo LEXIS 121; 44 T.C.M. (CCH) 1521; T.C.M. (RIA) 82626; October 26, 1982. Rajendar K. and Promila Singal, pro se. William F. Hammack, for respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: This case was assigned to Special Trial Judge Randolph F. Caldwell, Jr., for trial in accordance with General Order No. 6, 69 T.C. XV (1978). The Court agrees with and adopts his opinion which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE CALDWELL, Special Trial Judge: Respondent determined a deficiency in petitioners' 1979 Federal income taxes in the amount of $1,341. After concessions by the parties, the sole issue for decision is whether petitioners are entitled to deduct as a business expense under section 162, [1] or alternatively as a loss under section 165(c)(2), amounts expended for a trip to India. FINDINGS OF FACT Some of the facts have been *123 stipulated and are found accordingly.Petitioners resided in Troy, Michigan, at the time of the filing of the petition in this case. During 1979, Mr. Singal was employed as a chemist with General Motors Corporation, and has been so employed since September 1975. Prior to 1975, he had been employed by a company which manufactured dental goods. Mr. and Mrs. Singal are natives of India. During 1975, while residing in the United States, petitioners began giving consideration to starting a business for the manufacture of dental goods (materials for fillings and impressions) in India. An application for a plot of ground on which to construct a building for the business was made to the appropriate authorities in the State of Punjab. On May 8, 1979, the authorities made a tentative allotment of a plot containing 2500 square yards to Mr. Singal. The tentative allotment stated the purchase price to be 81,250 rupees (about $8,000 U.S.), of which 20 percent was required to be paid within 30 days. Petitioners did not make the required downpayment. Nevertheless, in the belief that the allotment would be made if financing for the project could be arranged, petitioners decided to go to *124 India to endeavor to raise capital and survey the potential market for dental goods to be manufactured. Petitioners flew to India and arrived there on or about December 4, 1979. Mr. Singal returned to the United States on January 10, 1980. Mrs. Singal returned on February 20, 1980. Petitioners anticipated that about $100,000 would be required to get the business started, about 90 percent of which they hoped to raise through loans from relatives, banks, and the Indian government. While in India they conferred with the potential sources of loans and called on dentists envisioned as potential customers. The relatives turned out to be unwilling to make loans upon which petitioners had been counting; and petitioners were unsuccessful similarly in the efforts to obtain bank loans. When petitioners were unable to raise capital from private sources, the Indian government also declined to lend them funds. There were also problems encountered relating to foreign exchange required to purchase raw materials from sources in the United States. During the time in which Mrs. Singal remained behind in India after Mr. Singal returned to the United States, she was able to get the tentative *125 allotment for the plot of land restored by the public authorities. The downpayment was never made on the restored tentative allotment. When Mrs. Singal returned from India with the allotment but with the information that the relatives were still unwilling to lend funds, petitioners abandoned the project. In order to conserve their limited financial resources petitioners stayed with their relatives while in India, and paid for the room and board and laundry which the relatives furnished them. Petitioners also rented a car from one of their relatives in which to travel while in India. Petitioners claimed an adjustment to income of $5,490 on their 1979 return, made up of claimed employee business expenses, as follows: Air fare
$2,000.00
Meals and lodging
2,890.00
Car expenses
600.00
Total
$5,490.00
Of the total amount of $5,490, the amount of $1,030 relates to expenses paid during the 1980 portion of the trip. Respondent disallowed the claimed adjustment to income. In 1981, Mr. Singal founded a business in India called the Indo-American Dental Company. The business activity of such company, during 1981, was the sale of dental products. The company *126 expanded operations during 1982 to include the manufacture and sale of dental products. The company is a partnership composed of Mr. Singal and a sister of Mrs. Singal, sharing profits and losses in the ratio of 80-20. OPINION Respondent does not question that petitioners incurred and paid the expenses going to make up the claimed adjustment to income. He contends, in support of his disallowance, that those expenses were personal expenses of a trip by petitioners to their homeland, and, if not personal, that such amounts constituted business start-up expenditures which must be capitalized. [2]
The circumstances that petitioners are natives of India and that they stayed (for reasons of economy) with *127 relatives while in India certainly justify taking a close, hard look at their expenditures and the asserted purpose of their trip. Nevertheless, having carefully observed petitioners as they testified and considering their testimony and the other evidence, we are persuaded that the primary and dominant purpose of their trip was to endeavor to start the projected business. Whatever personal purpose there was to the trip was merely incidental to the primary and dominant business purpose. That much said, we believe that respondent must still be sustained in his disallowance. This Court has only recently stated: Section 162(a) allows a deduction for all ordinary and necessary expenses paid or incurred during the taxable year "in carrying on any trade or business." This phrase has been held to deny current deductions for startup or preopening costs incurred by taxpayers prior to the beginning of actual business operations. Richmond Television Corp. v. United States,345 F.2d 901 (4th Cir. 1965), vacated and remanded on other issues, 382 U.S. 68 (1965); *128 Madison Gas and Electric v. Commissioner,72 T.C. 521, 566-567 (1979), affd. 633 F.2d 512 (7th Cir. 1980); Radio Station WBIR, Inc. v. Commissioner,31 T.C. 803, 810-812 (1959); Polachek v. Commissioner,22 T.C. 858 (1954). [Goodwin v. Commissioner,75 T.C. 424, 433 (1980), affd.     F.2d     (3rd Cir. 1982).] It is clear that petitioner was not carrying on the trade or business of manufacturing dental goods in 1979.It is also clear that the expenditures here involved bore no relation to the trade or business he was carrying on in 1979 -- that of being a chemist employed by General Motors. Therefore, section 162 furnishes no warrant for the adjustment to income claimed by petitioners. We turn to consider whether section 165 furnishes support for petitioners. Section 165(a) allows as a deduction any loss sustained during the taxable year that is not compensated for by insurance or otherwise. In relevant part, section 165(c), in the case of individuals, limits the deduction to losses incurred *129 in any transaction entered into for profit, though not connected with a trade or business. This Court considered the applicability of section 165(c)(2) in Seed v. Commissioner,52 T.C. 880 (1969). In Seed, the taxpayer, an attorney, was allowed to deduct expenses incurred during an unsuccessful attempt to secure a charter to operate a savings and loan association. This Court found that the taxpayer's activities in the venture qualified as a "transaction entered into for profit." These activities included: (1) hiring a law firm and a certified public accountant; (2) hiring a firm to conduct an economic survey of the area; (3) naming the board of directors; (4) authorizing and issuing shares of stock; (5) preparing articles of incorporation; and (6) appearing as a witness at public hearings. Seed can be contrasted with the facts of O'Donnell v. Commissioner,62 T.C. 781 (1974), affd. without published opinion 519 F.2d 1406 (7th Cir. 1975). In O'Donnell, this Court denied the taxpayer a deduction under section 165(c)(2) for expenses that he incurred to investigate the possible acquisition of a building for investment *130 purposes. The expenses were for travel, meals and lodging that the taxpayer incurred on his trip to view the building. This Court held that "the fact that petitioner did no more than make a preliminary investigation without commiting any funds to the * * * acquisition precludes any deduction for any loss 'incurred in any transaction entered into for profit' within the meaning of section 165(c)(2)." O'Donnell v. Commissioner, supra, at 786. See also Rev. Rul. 77-254, 1977-2 C.B. 63, holding that travel expenses incurred in seaching for a new business are investigatory expenses and therefore nondeductible. In the instant case, we believe that facts bring petitioners within the purview of the O'Donnell case. The only expenditures made by petitioners were for travel, meals and lodging. No funds were expended for the business itself. For instance, petitioners never made the downpayment needed to unconditionally obtain the land. We also must sustain respondent for another reason. *131 Section 165(a) provides that there shall be allowed a deduction for a loss sustained during the taxable year. This means the taxable year in which the loss occurs as evidenced by closed and completed transactions and as fixed by identifiable events occurring in such taxable year. Section 1.165-1(d)(1), Income Tax Regs. Petitioners' testimony established that they still hoped to begin the company in the early part of 1980. In fact, petitioners remained in India during part of January and February of 1980 to continue their efforts to begin the company. It was only later in that year that petitioners abandoned their plan. Therefore, if any loss did occur, it occurred in 1980, and not in 1979. Under the circumstances, the only year in which petitioners could attempt to claim their loss is 1980. For the above reasons, respondent is sustained. Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩
2. Respondent also contended that petitioners had failed to meet the requirements of section 274(c), relating to certain foreign travel. That section requires disallowance of deductions under section 162 and 212 for the portion of foreign travel which is not related to carrying on a trade of business or to pursuit of an activity described in section 212. Since it is held that none of the amounts here involved come within section 162 or 212↩, section 274(c) has no application.