JOEL HEIM, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent LAKE, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Heim v. Commissioner
Docket Nos. 1823-73, 1824-73.
United States Tax Court
T.C. Memo 1978-137; 1978 Tax Ct. Memo LEXIS 380; 37 T.C.M. (CCH) 584; T.C.M. (RIA) 780137; April 10, 1978, Filed; As Amended June 15, 1978 *380 Lake, Inc., sold its retail liquor business and all of its assets used therein, including its liquor license, in 1968 for $200,000 payable on the installment basis. It was not liquidated but was kept alive to receive the installment payments. Its only income in 1969 and 1970 was payments of principal and interest. It deducted various expenses including wages paid to its principal stockholder, Joel Heim, his mother, and girlfriend, rent paid to Heim, utilities, insurance, legal and accounting fees, and travel and entertainment. Respondent disallowed some of the expenses as being incurred in searching for a new business and other expenses as being for the personal benefit of Heim. Held: Respondent's allocation of expenses to investigatory activities approved and deductions for such expenses disallowed. Held: Respondent's allocation of part of the expenses as being for the personal benefit of Heim approved. Such expenses were not deductible by Lake, Inc., and are included in the taxable income of Heim as dividends. Held: Lake, Inc., was a personal holding company is 1969 and 1970 but because of the dividends paid deduction it was not liable for personal holding company tax. Respondent's *381 claim that the constructive dividends to Heim were preferential dividends and thus not deductible in determining undistributed personal holding company income not considered because first raised on brief. Joel Heim, pro se. Alan Summers, for the respondent. DRENNEN
MEMORANDUM FINDINGS OF FACT AND OPINION DRENNEN, Judge: In these consolidated cases respondent determined deficiencies in the income taxes of petitioners Joel Heim and Lake, Inc., as follows: Docket No.
Petitioner
Year
Deficiency
1823-73
Joel Heim
1969
$706.93
1970
941.74
1824-73
Lake, Inc.
1969
2,271.03
1970
2,217.30
In an amendment to answer in docket No. 1824-73 respondent also determined that Lake, Inc., is liable for personal holding company taxes in 1969 and 1970 pursuant to sections 541 etseq., I.R.C. 1954, [1] in the amounts of $4,724.47 and $4,322.78, respectively. The issues for decision are: 1. Whether certain miscellaneous expenses, expenses for postage and office supplies, advertising expenses (1969 only), and travel and entertainment expenses, and portions of telephone and auto expenses, *382 and auto depreciation deducted by Lake, Inc., on its returns, aggregating $5,753.29 for 1969 and $5,005.06 for 1970, should be disallowed for the reason that they were expenses of investigating new businesses rather than ordinary and necessary business expenses. 2. Whether casual labor expenses, portions of insurance, light, heat, and water expenses, and the remaining portions of the telephone and auto expenses, and auto depreciation deducted by Lake, Inc., on its returns, aggregating $3,631.15 for 1969 and $4,827.79 for 1970, should be disallowed as deductions to Lake, Inc., and included in the income of Joel Heim as constructive dividends. 3. Whether Lake, Inc., is liable for personal holding company taxes in the amounts of $4,724.47 and $4,322.78 for 1969 and 1970, respectively. FINDINGS OF FACT Some of the facts have been stipulated and are so found. [2]
Joel Heim (Heim), petitioner in docket No. 1823-73, resided in Hollywood, Fla., at the time of the trial of this case. At the time the petition was filed Heim resided *383 at 100 Newton Avenue, Oaklyn, N.J. For the taxable years 1969 and 1970, Heim, a calendar year taxpayer, filed his income tax return with the district director, Philadelphia, Pa. Lake, Inc. (Lake), petitioner in docket No. 1824-73, is a duly organized corporation incorporated under the laws of the State of New Jersey in 1955. Its principal office at the time the petition was filed also was located at 100 Newton Avenue, Oaklyn, N.J. At the time of the trial of this case, its principal office was located in Hollywood, Fla. For the taxable years 1969 and 1970, Lake, a calendar year taxpayer using the accrual method of accounting filed its income tax return with the district director, Philadelphia, Pa.
In the notice of deficiency issued to Lake with respect to taxable years 1969 and 1970, respondent allowed in part or in full certain deductions claimed by Lake on its Federal income tax returns as ordinary and necessary business expenses. Respondent disallowed in part or in full certain deductions claimed by Lake on these returns because petitioner Lake had failed to establish that these amounts represented ordinary and necessary expenses incurred in carrying on a business but instead *384 were expenses incurred in investigating new businesses. In addition, certain additional portions of these disallowed expenses, and in some instances portions or the full amounts of other expenses, were disallowed and treated as constructive dividends to Heim. The adjustments made by respondent in the notice of deficiency were attached to the notice of deficiency as follows: 1969
Additional Amts
disallowed
Investi-
and
Amts. allowed
gative
Amts. treated
as ordinary
Amts. dis-
as constructive
Total
& necessary
allowed
dividends
Compensation
$3,000.00
$3,000.00 of officers Rent
2,583.75
2,583.75 Depreciation
1,200.00
840.00
360.00 auto Advertising
102.00
102.00 Auto expenses
3,247.42
2,273.19
974.23 Bank charges
2.00
2.00 Insurance
179.73
107.84
71.89 Light, power
412.58
247.55
165.03 & water Miscellaneous
59.03
59.03 Postage & office
1,395.88
1,395.88 supplies Profession &
750.00
750.00 Legal Exp. Telephone
449.24
389.24
60.00 Taxes
345.56
345.56 Casual Labor
2,000.00
2,000.00 Travel & enter-
693.95
693.95 tainment
$16,421.14
$7,036.70
$5,753.29
$3,631.15
1970 Compensation of officers
$ 3,000.00
3,000.00 Repairs
185.00
185.00 Rent
2,700.00
2,700.00 Taxes
419.99
419.99 Depreciation
1,200.00
840.00
360.00 auto Auto expenses
3,216.22
2,251.35
964.87 Bank charges
6.90
6.90 Insurance
264.32
158.60
105.72 Light, heat
342.99
205.79
137.20 & power Postage & Office
1,420.44
1,420.44 supplies Telephone
553.27
493.27
60.00 Casual labor
3,200.00
3,200.00 Legal & acctg.
375.00
375.00
$16,884.13
$7,051.28
$5,005.06
$4,827.79
*385 On or about August 1, 1960, Heim acquired all of the stock of Lake from its prior owner. Ninety-eight shares were issued in Heim's name, one share was issued in the name of Heim's mother, Roslyn, and one share was issued in the name of Heim's former wife. Heim divorced his wife in 1969 and the share formerly held by Heim's wife was issued in the name of Hanna Thalheim, Heim's aunt. Heim was president and Roslyn was secretary of Lake during 1969 and 1970, and both were directors of the corporation. Lake operated a retail liquor store until February 6, 1968, at which time the assets of the business, which included its New Jersey State liquor license, were sold to Lorec, Inc., for $200,000, payable in installments. Lake elected under section 453 to report the gain on the sale on the installment method of accounting. Following the sale of its liquor business Lake did not liquidate but was continued for the purpose of collecting the payments on the installment note and searching out new lines of business. It was not actively engaged in the conduct of a trade or business in 1969 and 1970. On its tax returns for 1969 and 1970, Lake listed its principal business activity as investments. *386 Heim, by corporate resolution, had employment contracts with Lake for the years 1969 and 1970. The contracts provided in pertinent part: Lake, Inc., agrees to employ, Joel Heim, to maintain the corporate existence, to live up to Lake, Inc.'s obligations to Lorec Inc. and to seek out new ventures and existing businesses for Lake Inc., to participate in, in the future. For these services performed Lake, Inc. agrees to compensate Joel Heim $3,000 per year plus pay him for all travel expenses and general expenses incurred in the performance of his duties. Lake withheld both income and employment taxes on the salary paid to Heim in both 1969 and 1970. There was no written provisions in the contract of sale between Lake and Lorec, Inc., with regard to Heim rendering services to Lorec. Lorec did not pay Lake for any services performed by Heim. Heim usually visited the liquor store for a few hours on Fridays to give advice as to inventory maintenance and customer relations. During 1969 and 1970 Heim made automobile trips to New York City, Baltimore, Washington, D.C., Philadelphia, and elsewhere in an effort to locate a new line of business which Lake could operate. Heim's then girlfriend *387 and present wife, Eileen Azeff, accompanied him on several of these trips. When he was in New York Heim lodged with his mother who lived in an apartment in New York. No contemporaneously maintained records showing the purpose of the trips or the mileage compiled were produced prior to or at the trial. [3]
During 1969 and 1970 Heim maintained Lake's corporate and bank records. In 1969 Heim also reconciled in Lake's favor a New Jersey sales tax deficiency asserted against it. The sales to which the deficiency related were to taxexempt organizations. Heim spent several months reconstructing the sales and establishing with documents the taxexempt status of the organizations. No records substantiating the distance traveled, amount of time devoted, or actual expenditures pertinent to this activity were maintained by Heim during 1969. During his divorce proceedings in 1969 Heim made several trips to Newark, N.J., to negotiate with his wife's attorney and to obtain his former wife's *388 signature on agreements pertaining to the stock holdings in Lake. Also for a short period during 1969 Heim and Eileen Azeff became involved, whether on their behalf or Lake's behalf being unclear, in an unsuccessful cosmetics distribution business which sustained an unreported loss of $100. During 1969 and 1970 Heim also attended weekly meetings of the South Jersey Retail Liquor Association and liquor and trade shows on several occasions in order to maintain a liaison with the industry for future connections. Lake deducted an advertising expense in 1969 of $102. This expense represents a delayed payment for promotional advertising services provided to Lake in 1968. It also deducted in 1969 $59.03 expended for advertising the liquor store in local churvh bulletins.
The automobile owned by Lake and used by Heim during 1969 and 1970 was the only automobile availablel to him for corporate and personal purposes. All the automobile expenses incurred during 1969 and 1970 returns. The depreciation on the automobile was deducted in full by Lake in 1969 and 1970.[4] *389 During 1969 and 1970, Lake rented the first floor of a building owned by Heim as office space and paid Heim $175 per month in 1969 and $225 per month in 1970 as rent. Heim used the upper floors of this building as his residence. The building had one telephone listing with several extensions. Lake paid during 1969 and 1970 the light, heat, power, and telephone expenses without reimbursement by Heim for his personal use of the building or telephone. [5]
Lake also paid the fire and multi-peril insurance premiums for the building and the premiums for health insurance for Heim during 1969 and 1970. On its 1969 and 1970 returns Lake claimed a deduction for compensation paid to Roslyn *390 Heim for casual labor in the amount of $2,000. This disbursement was reflected on Lake's books as a lump-sum payment. In fact, the $2,000 was disbursed to Roslyn Heim in monthly payments of $160. The payments were made in cash or by Heim's personal check. The $2,000 check issued by Lake to Roslyn Heim at the end of 1969 and 1970 was endorsed by her to her son. Roslyn, who resided in New York City, took telephone calls for Heim at her apartment or at his residence when he was unavailable. She also checked the New York newspapers for potential business ventures and made appointments to enable Heim to investigate new businesses. She also performed light typing and general secretarial work for Heim from her apartment. With respect to the payments made to Roslyn by Lake in 1969 and 1970, no timekeeping records were maintained, no employment taxes were withheld, and no Form W-2's were filed by Lake. Roslyn had been a widow since 1940 and Heim is her only child and their relationship was very close. During 1969 and 1970 her sole sources of income were the monthly payments of $160 and social security. She received no other payments from Heim. On its 1970 return Lake claimed a deduction *391 for compensation paid to Eileen Azeff for casual labor in the amount of $1,200. This disbursement was reflected on Lake's books as a lump-sum payment to her. However, Eileen was paid $25 per week in cash by Heim throughout 1970. The $1,200 check issued by Lake to Eileen at the end of 1970 was endorsed by her and given to Heim. Eileen, Heim's present wife, was his girlfriend during the taxable years at issue. She resided with her family in Philadelphia in 1969 and 1970 and was employed there in 1969. In 1970 she did some typing and filing and answered the telephone for Heim. No employment taxes or income tax was withheld from the payments to Eileen and no Form W-2 was filed by Lake with respect to Eileen. She also accompanied Heim on several of his trips during 1969 and 1970 but she usually went shopping or waited at the motel while he conducted his activities. During 1969 and 1970 the total income received and reported by Lake consisted of interest and principal derived from the payments made on the installment note by Lorec, Inc. The interest income amounted to $12,135.17 and $11,967.35 in 1969 and 1970, respectively. Principal payments for these years were $4,427.61 and *392 $5.105.25, respectively. The amendment to answer in docket No. 1824-73 alleges in part: (e) That in the computation statement attached to the statutory notice of deficiency dated December 26, 1972, upon which notice the above-entitled case is based, it is indicated that corporate expenses in the respective amounts of $3,631.15 and $4,827.79 for 1969 and 1970 are disallowed to the petitioner as they represent constructive dividends to its sole shareholder. (f) That the respondent failed to include an adjustment for personal holding company tax liability in its statutory notice of deficiency because he believed that the expenses designated as constructive dividends in the computation statement referred to in (e) above, would qualify for the deduction for dividends paid of Code[section] 561, which would cause the undistributed personal holding company income, as defined in Code[section] 545(a) to be reduced to nominal amounts and thereby virtually eliminate any personal holding company tax liability. (g) If the Court finds that the disallowed expenses referred to in (e) above are not taxable to the sole shareholder of the petitioner as constructive dividends, but are nevertheless *393 not allowable as deductions to the petitioner corporation, then the petitioner will be liable for personal holding company taxes in the respective amounts of $4,724.47 and $4,322.78 for 1969 and 1970. OPINION Respondent has disallowed in whole or in part deductions claimed by Lake as ordinary and necessary business expenses on its 1969 and 1970 income tax returns. The disallowed expenses are categorized in the notices of deficiency as investigative expenses and as personal expenses of Heim. We shall examine first the category of disallowed expenses relating to the investigation by Heim of potential business prospects on behalf of Lake during 1969 and 1970.
As a general rule, section 162(a) allows a deduction to a corporation for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *." However, the expenses of investigating and searching for a business enterprise in which to become involved are not deductible pursuant to section 162(a) unless they are incident to an existing trade or business. Frank v. Commissioner,20 T.C. 511, 513 (1953); O'Donnell v. Commissioner,62 T.C. 781, 785 (1974), affd. 519 F. 2d 1406 (7th Cir. 1975); *394 cf. Cremona v. Commissioner,58 T.C. 219, 221-222 (1972). [6] *395 Respondent determined that the expenses in question were not ordinary and necessary expenses incurred by Lake in carrying on a trade or business but were expenses incurred in the investigation by Heim of potential business prospects for Lake. Respondent's determination bears a presumption of correctness and the burden of proof is on petitioner to show error in respondent's determination by competent evidence. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure. This petitioner has failed to do. In 1968 Lake sold all of its operating assets, including a State of New Jersey liquor license, to Lorec, Inc. Retail sale of alcoholic beverages in New Jersey without a license is prohibited. New Jersey Stat. Ann., sec. 33:1-2 (West Supp. 1977). Thus Lake terminated its retail liquor business in 1968 and did not resume it in 1969 or 1970. We have no credible evidence that Lake was actively engaged in the conduct of any other business in 1969 and 1970. [7] *396 The only income it reported on its tax returns were the installment payments made by Lorec on the purchase price of the business. On the other hand we do have evidence from petitioners' witnesses that Heim was traveling about seeking a new and different business venture for Lake. Respondent determined that 70 percent of the auto and telephone expenses and all of the advertising, miscellaneous, postage and office supplies, and travel and entertainment expenses were attributable to Heim's investigative activities.There is no evidence that these expenses were incurred in any other activity of Lake, and we cannot understand how such expenses could have been incurred in the passive activity of receiving installment payments from one source, which was Lake's only other activity. Respondent allowed Lake deductions for all of Heim's salary, the rent paid, taxes, professional and legal expenses, and a part of the insurance and utility expenses. These allowances were in recognition that a corporation has a right to maintain its existence and to deduct expenses reasonably related to that endeavor. We believe respondent's allowances were generous for that purpose and petitioners have presented no evidence that convinces us that respondent erred in this regard. In a rather confused effort to overcome respondent's *397 allocation of 70 percent of the above expenses to investigation, petitioners presented what is referred to as "eight points" which they argue prove that Heim spent at least 50 percent of his activities on regular corporate business. However, no portion of the disputed expenses are traced to any particular activity, and many of them are not substantiated as required by section 274(d).Furthermore, respondent has made allowances for some of them and others would not be deductible by Lake even if substantiated. Point 1 involves the maintenance of Lake's books and records and banking matters and personal visits with Lake's attorneys and accountants. Respondent's allowance of all of the claimed expenses for Heim's salary and for legal and accounting expenses adequately covers this point. Points 2 and 4 relate to Heim's alleged advisory activities for Lorec and its stockholders. There is no evidence that Lake was obligated to perform such services for Lorec; it was apparently offered gratuitously. Point 3 deals with securing Heim's divorce in 1969. This was personal to Heim and should have no connection with Lake. Point 5 is Heim's allegedly successful contest of a sales tax deficiency *398 asserted against Lake by the State taxing authorities. While this activity may be considered to have been incident to Lake's business, we have no evidence of the expenses involved and must assume that they are covered by the allowances made by respondent. Points 6, 7, and 8 relate to Heim's trips to and attendance at various liquor industry meetings, conventions, and trade shows. We have concluded that these activities were performed, at best, in search of future business prospects for Lake, or for the personal pleasure and gratification of Heim. Lake was not in the liquor business in 1969 and 1970, and such expenses would not be deductible by it under section 162(a). We approve respondent's allocations of expenses to Lake's investigatory activities and agree that such expenses are not deductible by Lake as ordinary and necessary business expenses. The advertising expenses in the amounts of $102 and $59.03 claimed on Lake's 1969 return have not been shown to be in any way related to a business conducted by Lake in 1969. The remaining disallowances of expenses deducted by Lake, Inc., on its 1969 and 1970 returns are predicated on respondent's determination that these expenditures *399 related to Heim's personal use of corporate property or were expended for his personal benefit. As such, these expenses would not be deductible by Lake, Inc. , and would constitute constructive dividend distributions by Lake to Heim. The expenses so treated are set forth in the Findings of Fact and will be specifically discussed below.
It is well settled that payments made by a corporation on behalf of its stockholder may constitute taxable dividends to the stockholder. American Properties, Inc. v. Commissioner,28 T.C. 1100, 1115 (1957), affd. per curiam 262 F. 2d 150 (9th Cir. 1958). A taxpayer who is a stockholder has been held to have received constructive dividends in many situations where he has received an economic benefit as a result of the payment made to him or for his benefit by the corporation. * * * * * *
The underlying basis of taxation of constructive dividends is found in the oft repeated statement reading: "The courts, as arbiters of the true nature of corporate payments, have consistently used as a standard the measure of receipt of economic benefit as the proper occasion for taxation." [Cits. omitted.] Thus, where a corporation makes a distribution to a shareholder *400 which serves no legitimate corporate purpose and which results in an economic benefit to the shareholder, little difficulty is experienced in treating such payments as a constructive dividend to the benefited shareholder. [Commissioner v. Riss,374 F.2d 161, 167 (8th Cir. 1967), affg. in part, revg. in part and remanding sub nom. Riss & Co., Inc. v. Commissioner,T.C.Memo. 1964-190.]
Examples of situations in which a constructive dividend may be found are the payment of the individual expenses of a shareholder, Greenspon v. Commissioner,23 T.C. 138, 151 (1954), affd. on this issue 229 F. 2d 947 (8th Cir. 1956), and the personal use of corporate property by a shareholder. Challenge Manufacturing Co. v. Commissioner,37 T.C. 650 (1962). Respondent allocated 30 percent of the claimed automobile expenses and depreciation for both taxable years to Heim's personal use of the automobile. Heim claims that he traveled approximately 45,000 miles in 1969 and 1970 and that only 5,000 of those miles, being those traveled in the immediate vicinity of his home, were for personal purposes. He offered no evidence such as contemporaneously maintained mileage records to substantiate his testimony. *401 The evidence indicates, however, that Heim met with his wife's attorneys in Newark and New York in connection with his divorce, that he frequently visited his mother in New York, and that he visited his then girlfriend and present wife in Philadelphia.Such trips would not be in the vicinity of his home and would not be included in the 5,000-mile estimate. Furthermore, Heim must establish to our satisfaction by credible evidence that respondent's allocation is unfounded. This is not a situation where Heim's guess is as good as anyone else's guess. But his "guesstimate" is all he has offered to overcome respondent's allocation. That is not enough. Consequently, 30 percent of the automobile expenses deducted by Lake in 1969 and 1970 are disallowed as being for the personal benefit of Heim. This amount thus represents a constructive dividend to Heim. Also, 30 percent of the automobile depreciation deducted by Lake in 1969 and 1970 is disallowed and is taxable to Heim as the fair market value of the personal use of corporate property. Henry Schwartz Corp. v. Commissioner,60 T.C. 728, 744 (1973). Also disallowed by respondent was 30 percent of the light, heat and power, insurance, *402 and telephone expenses deducted by Lake during the taxable years at issue. During these years the business residence of Lake and Heim's personal residence were located in the same building. The building was owned by Heim. He lived on the upper floor and the ground floor was leased by Heim to Lake. The lease agreement provided that Lake would pay the light, heat, power and insurance expenses for the property. Insurance premiums were paid by Lake for Blue Cross coverage for Heim and for fire and multiperil coverage for the premises. Only one telephone listing with several extensions served Lake and Heim, but Lake paid all the telephone bills during 1969 and 1970. Heim argues that the lease provision mentioned above and the fact that Lake paid all the rent renders the utility expenses (other than telephone) and insurance costs paid by Lake fully deductible by the corporation. Heim chooses to ignore the obvious. The payment of rent by a corporation for the use of premises in which to conduct business is a legitimate business expense. But payment by a corporation of expenses allocable to a shareholder's personal use of the premises is not a legitimate business expense, contractual *403 provisions to that effect notwithstanding. If a contractual provision between a corporation and its shareholder were allowed to prevail over this dichotomy, the potential for evasion of the prohibition against deductions for an individual's personal expenses embodied in section 262 is readily apparent. That Heim recognized this potential and took advantage of it we believe is readily apparent from the record. [8]
With regard to the telephone expenses for 1969 and 1970, Heim conceded at trial that $24 per year of the telephone expense was incurred by his personal use of it. His estimate is not only conjectural, but it is also limited to calls made to parties residing in Oaklyn. But Heim's mother lived in New York City during 1969 and 1970 and his girlfriend, Eileen Azeff, lived in Philadelphia during *404 1969 and 1970. Presumably Heim placed telephone calls to them for personal reasons during 1969 and 1970. Moreover, he made telephone calls to his attorney and to his wife's attorney in connection with his divorce. The cost of these calls would not have been covered by the local use charge. Consequently, Heim's estimate is of little assistance in disproving respondent's allocation of 30 percent of the telephone expense to his personal use. Therefore, respondent's determination in the notices of deficiency with regard to these portions of utility, telephone, and insurance expenses deducted by Lake is upheld. These amounts constitute constructive dividends to Heim. With regard to the deductions claimed by Lake as payments for casual labor performed by Roslyn Heim, Heim's mother, in 1969 and 1970, and Eileen Azoff Heim, Heim's present wife, in 1970, respondent contends that these payments were in fact gifts from Heim rather than payments for services rendered to Lake. Heim's mother, aged 72 and 73 during 1969 and 1970, testified that she assisted Heim in his search for a new business by reading the appropriate ads in the New York City newspapers and by making telephone contact with *405 potential businesses. She estimated that she spent 5 hours per day, 5 days per week, performing this task. She also testified that she performed light typing and general secretarial work for Lake. However, no W-2 forms were filed with respect to the $160 monthly payments to Roslyn Heim, no taxes were withheld, and no records of her employment time were kept. The payments were made either in cash or with Heim's personal check. At the end of each of the taxable years at issue, Lake, Inc., issued a check to Roslyn Heim for $2,000 which she endorsed back to Joel Heim. Other than these monthly payments, Roslyn Heim's sole source of income was her social security benefits. She had no other children. We believe that the evidence as presented supports respondent's view of the matter. The payments to Roslyn Heim evidently were not made with corporate funds but rather with Heim's personal funds. The exchange of the check between his mother and Heim at the end of each year is an obvious contrivance intended to give Lake a basis for a deduction and to reimburse Heim for his generosity. While Roslyn Heim may have performed some of the tasks referred to by her in her testimony, see Romine v. Commissioner,25 T.C. 859, 877 (1956); *406 4A Mertens, Law of Federal Income Taxation, sec. 25.63, p. 283 (1972 Rev.), we cannot believe that she spent that much time on Lake's nonexistent business. There is no evidence that Lake agreed to compensate her for her time, and we have the distinct impression that she was doing whatever she did for her son rather than Lake. Consequently, we hold that the claimed deductions properly were disallowed to Lake. We further find that the checks issued by Lake to Roslyn Heim during 1969 and 1970 constitute an actual rather than a constructive distribution of the corporate funds to Joel Heim. The parties to this three-cornered exchange of money never intended that the checks belonged to or would be paid to Roslyn Heim. She was the linchpin and conduit of the scheme set up by Heim whereby money was siphoned from the corporation in a manner geared to give Lake a deduction and Heim no resulting taxable income. In effect and intent, if not in form, the checks were payable directly to Heim in order to replenish his funds with the amount of his gifts to his mother. Consequently, the full amount of $2,000 payments made by Lake in 1969 and 1970 is taxable to Joel Heim as dividend income. The *407 $1,200 deduction claimed by Lake for casual labor performed by Eileen Azeff in 1970 is plagued by the same problems surrounding the payments to Roslyn Heim. Eileen may have performed some incidental typing and secretarial work for Heim and accompanied Heim on some of his treks in search of a business venture. However, we are convinced that this was done out of affection for Heim rather than for compensation from Lake. There was no agreement that she was to be compensated by Lake, and there was no record of her hours kept by Lake; nor did Lake withhold income tax from her. Eileen was paid $25 per week in cash by Heim.At the end of the year Lake issued her a check for $1,200 which she endorsed and gave back to Heim. Again, we find this to be a scheme devised by Heim to withdraw funds from the corporation to meet his personal obligations in such a manner that the corporation would get a deduction and there would be no taxable income to him. We conclude that the $1,200 received by Eileen in 1970 was a gift of corporate funds to her by Heim. Consequently, the deduction by Lake was properly disallowed and for the same reasons set forth above is taxable as a dividend to Heim. The *408 remaining issue in this case involves respondent's assertion in the amendment to his answer that Lake was a personal holding company as defined in section 542(a) in 1969 and 1970 [9] thereby requiring imposition of the personal holding company tax set forth in section 541. [10] *409 Respondent bears the burden of proof with regard to this issue. Rule 142(a), Tax Court Rules of Practice and Procedure. We conclude that Lake was a personal holding company in 1969 and 1970. All of its stock was held by 3 persons and more than 60 percent of its adjusted ordinary gross income was personal holding company income during these years. The corporate income tax returns filed by Lake, Inc., for the taxable years 1969 and 1970 show that it collected interest in the amounts of $12,135.17 and $11,967.35, respectively, and principal in the amounts of $4,427.61 and $5,105.25, respectively, from payments of the note it received from Lorec, Inc. These items constituted Lake, Inc.'s only income during these years. Interest on an installment note constitutes ordinary gross income as defined in section 543(b)(1)[11] and "adjusted ordinary gross income" as defined in section 543(b)(2).[12] In turn, interest income from an installment payment is "personal holding company income" as defined in section 543(a)(1).[13] *411 Consequently, all of Lake's adjusted ordinary gross income in 1969 and 1970 was personal holding company income. And because *410 Lake's stock was owned by three persons during these years, Lake satisfies the definitional requirements of section 542(a) and was a personal holding company during the taxable years at issue. However, these facts are prerequisites only to imposition of the personal holding company tax set forth in section 541. The tax imposed is 70 percent of the "undistributed personal holding company income" of Lake for 1969 and 1970. Respondent also bears the burden of establishing that amount and it is here that respondent's case falters.
Undistributed personal holding company income is defined in part in section 545(a) as taxable income minus the dividends paid deduction allowed by sections 561 etseq. [14] *412 Section 561(a)(1) allows a personal holding company a deduction for dividends paid by the corporation during the taxable year. Constructive dividends during the taxable year are eligible for the dividends paid deduction. Henry Schwartz Corp. v. Commissioner,supra at 747 However, a preferential dividend, as defined in section 562(c), [15] is not eligible for the dividends paid deduction. The amended answer alleges that Lake is liable for the personal holding company tax in 1969 and 1970 if the deductions taken by Lake for 1969 and 1970 are disallowed but are not *413 considered constructive dividends to Joel Heim. We have concluded that the disallowed expenses were constructive or actual dividends to Heim, so the allegation in respondent's amended answer is not applicable. However, on brief respondent argues that Lake is liable in 1969 and 1970 for the personal holding company tax because the constructive dividends to Joel Heim are preferential dividends. The importance of this discrepancy is apparent upon examination of the pertinent personal holding company provisions mentioned above. If the expenses are treated as constructive or actual dividends to Joel Heim, there is a reduction in the amount of undistributed personal holding company income because of the dividends paid deduction of section 561. But if the expenses are treated as dividends but are preferential dividends, there is no reduction in undistributed personal holding company income because of section 562(c). Because we have found that certain of the disallowed expenses were constructive or actual dividends to Joel Heim, the issue of whether they were preferential dividends becomes crucial. However, the discrepancy between respondent's allegations in the amended answer and his *414 arguments in his brief obviates a determination whether the dividends in this case are preferential. It is well settled that an issue raised for the first time on brief is not properly before us. Aero Rental v. Commissioner,64 T.C. 331, 338 (1975). Consequently, we find that respondent has not established that Lake is liable in 1969 and 1970 for the personal holding company tax of section 541. [16] This portion of the deficiencies asserted against Lake is not upheld. Because of this result, our Decisions will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect in the years in issue, unless otherwise specified.↩
2. Petitioners made no request for findings of specific facts and it is difficult to ascertain from petitioners' briefs what is fact and what is wishful thinking.↩
3. In 1971 during the course of the audit Heim prepared a notebook summarizing the trips he took during 1969 and 1970 in an effort to reconstruct the mileage and estimate the expenses allocable to these trips.↩
4. Heim estimated that 10 percent of the automobile expenses and depreciation deducted by Lake, Inc., in 1969 and 1970 are allocable to his personal use of the automobile.This estimate apparently is based on another estimate that he traveled approximately 45,000 miles in both years and that approximately 5,000 of these miles were traveled in the Oaklyn area for his personal reasons.
5. Heim conceded at trial that $24 per year of the telephone expense was incurred by his personal use of it. He states that unlimited local service in Oaklyn cost approximately $6 per month. One-third of that is $2 and when multiplied by 12 months equals $24.↩
6. Heim's argument that the cases disallowing a deduction under sec. 162(a) for investigative expenses do not apply to a corporation which is capitalized prior to its investigation of business opportunities is specious. Cf. Mid-State Products Co. v. Commissioner,21 T.C. 696, 714 (1954). Furthermore, his argument that Lake could be considered a dealer in businesses thereby permitting the deduction of the investigatory expenses is without any foundation in the record. The contention that the investigatory activities were ordinary and necessary to Lake's survival and therefore deductible under sec. 162(a)↩ is novel but fallacious. Lake is a corporate entity whose survival as such is dependent upon the existence of its charter and its compliance with statutes regulating corporations.
7. Heim's testimony that he and Azeff entered the cosmetics business in behalf of Lake is unconvincing. The testimony suggested that it was a personal venture of Heim and Azeff, and it was not recorded on Lake's returns. Heim's testimony that Lake made an abortive attempt to get into the employment agency business in 1971 is irrelevant. 1971 is not before us and we have no claim for an operating loss carryback.
8. Heim further argues that the health insurance premiums disallowed by respondent could be treated as additional wages to him. This contention contradicts the compensation provided in his employment contracts with Lake. That provision refers to general expenses incurred in the performance of his duties as being compensable. Expenses for health insurance are not expenses so incurred.↩
9. Section 542(a) provides in pertinent part: GENERAL RULE.--For purposes of this subtitle, the term "personal holding company" means any corporation (other than a corporation described in subsection (c)) if-- (1) * * * At least 60 percent of its adjusted ordinary gross income (as defined in section 543(b)(2)) for the taxable year is personal holding company income (as defined in section 543(a)), and (2) * * * At any time during the last half of the taxable year more than 50 percent in value of its outstanding stock is owned, directly or indirectly, by or for not more than 5 individuals. * * * ↩
10. Section 541 provides: In addition to other taxes imposed by this chapter, there is hereby imposed for each taxable year on the undistributed personal holding company income (as defined in section 545) of every personal holding company (as defined in section 542↩) a personal holding company tax equal to 70 percent of the undistributed personal holding company income.
11. Sec. 543(b)(1) provides in pertinent part: (b) Definitions.--For purposes of this part-- (1) Ordinary gross income.--The term "ordinary gross income" means the gross income determined by excluding-- (A) all gains from the sale or other disposition of capital assets, (B) all gains (other than those referred to in subparagraph (A)) from the sale or other disposition of property described in section 1231(b), and * * * ↩
12. Sec. 543(b)(2) provides in pertinent part: (2) Adjusted ordinary gross income.--The term "adjusted ordinary gross income" means the ordinary gross income adjusted as follows: * * *
(C) Interest.--There shall be excluded-- (i) interest received on a direct obligation of the United States held for sale to customers in the ordinary course of trade or business by a regular dealer who is making a primary market in such obligations, and (ii) interest on a condemnation award, a judgment, and a tax refund. ↩
13. Sec. 543(a)(1) provides in part: General Rule.--For purposes of this subtitle, the term "personal holding company income" means the portion of the adjusted ordinary gross income which consists of: (1) * * * interest * * *↩
14. Sec. 545(a) provides in pertinent part: (a) Definition.--For purposes of this part, the term "undistributed personal holding company income," means the taxable income of a personal holding company adjusted in the manner provided in subsections (b), (c), and (d), minus the dividends paid deduction as defined in section 561. * * * Sec. 561(b) states: (b) Special Rules Applicable.--In determining the deduction for dividends paid, the rules provided in section 562↩ (relating to rules applicable in determining dividends eligible for dividends paid deduction) and section 563 (relating to dividends paid after the close of the taxable year) shall be applicable. 15. Sec. 562(c) provides: (c) Preferential Dividends.--The amount of any distribution shall not be considered as a dividend for purposes of computing the dividends paid deduction, unless such distribution is pro rata, with no preference to any share of stock as compared with other shares of the same class, and with no preference to one class of stock as compared with another class except to the extent that the former is entitled (without reference to waivers of their rights by shareholders) to such preference.↩
16. This conclusion renders petitioners' motion to vacate this Court's order granting respondent permission to amend the answer moot.↩