FITZHUGH L. ODOM, JR., AND DONNA C. ODOM, v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Odom v. Commissioner
Docket No. 16305-79.
United States Tax Court
T.C. Memo 1982-531; 1982 Tax Ct. Memo LEXIS 211; 44 T.C.M. (CCH) 1132; T.C.M. (RIA) 82531; September 16, 1982. *211 (1) Petitioners acquired a parcel of real property in Richmond, Virginia, in late 1977. They rented the property to a relative beginning in January 1978. Held: they are not entitled to deduct their 1977 expenses with respect to this property. (2) Petitioners owned several rental properties in or near Ahoskie, North Carolina. Held: they have failed to show that claimed management fees for these properties were paid in 1977. (3) Petitioners spent $990 on a new roof on one of the Ahoskie, North Carolina, properties. Held: petitioners have failed to show that respondent erred in determining that the expenditure is a capital item, to be depreciated over 10 years. (4) Petitioners used a room in their house as an office with respect to their rental properties. They also used this room as their bedroom. Held: petitioners did not use this room "exclusively" for business purposes ( sec. 280A(c)(1), I.R.C. 1954) and so they are not entitled to deduct the cost of this office ( sec. 280A, I.R.C. 1954). Fitzhugh L. Odom, Jr., pro se. Richard F. Stein, for the respondent. CHABOT
MEMORANDUM FINDINGS OF FACT AND OPINION CHABOT, Judge: Respondent determined a deficiency in Federal individual income tax against petitioners for 1977 in the amount of $743. The issues for decision [1] are as follows: *212 (1) Whether petitioners are entitled to deduct certain items with respect to property they acquired at the end of 1977; (2) Whether petitioners have substantiated payments for management fees with regard to certain rental properties; (3) Whether petitioners are entitled to deduct currently the entire cost of a new roof placed on one of their rental properties; and (4) Whether petitioners used an office in their home exclusively for business purposes. FINDINGS OF FACT Some of the facts have been stipulated; the stipulations and the stipulated exhibits are incorporated herein by this reference. When the petition in this case was filed, petitioners Fitzhugh L. Odom, Jr. (hereinafter sometimes referred to as "Odom"), and Donna C. Odom, husband and wife, resided in Richmond, Virginia. By deed dated October 20, 1977, petitioners acquired a house and land at 1605 Cloister Drive, Richmond (hereinafter sometimes referred to as "the Richmond property"). This deed recites that: in 1974, the Richmond property had been conveyed by its then owners in trust to secure a promissory note by the then owners payable to the Central National Bank of Richmond, Virginia (hereinafter sometimes *213 referred to as "the Bank"); the owners defaulted on the promissory note; the Bank directed that the Richmond property be sold; on October 20, 1977, the Richmond property was sold to Mulberry Corporation; Mulberry Corporation directed that the Richmond property be conveyed to petitioners; the conveyance is made to petitioners; and both the sale to Mulberry Corporation and the conveyance to petitioners are made subject to a 1973 deed of trust securing a debt, the unpaid balance of which (as of October 20, 1977) was approximately $32,973.46. The dates of the acknowledgment of the deed by the selled and by the Mulberry Corporation are December 29,1977, and December 30, 1977, respectively. Contrary to the recital in the deed, the unpaid balance of the 1973 debt on October 20, 1977, was $33,138.74. This balance was reduced to $32,973.46 by a payment processed by the mortgagee, the First Mortgage Corporation (hereinafter sometimes referred to as "First Mortgage"), on December 12, 1977. A payment processed by First Mortgage on December 30, 1977, further reduced the balance to $32,917.65. Of the latter payment $212.95 was credited to interest on the debt and $65.54 was credited to an *214 escrow account. First Mortgage paid $242.25 on May 16, 1977, and a like amount on November 9, 1977 (totalling $484.50 in the year), in taxes out of escrow. In November and December 1977, Odom was negotiating with the Bank and First Mortgage as to the interest rate he would have to pay on assuming the obligation of the 1973 debt. The interest rate was set at 8.75 percent. Previously, the interest rate had been 7.75 percent; the 7.75 percent interest rate applied to the payment processed by First Mortgage on December 30, 1977. Odom intended to buy the Richmond property in order to rent it to his wife's uncle, Richard Body (hereinafter sometimes referred to as "Body"). As of December 31, 1977, no one lived in the Richmond property. The Richmond property was rented to Body in January 1978 for $350 per month, with Body to pay the utility bills. On January 30, 1978, a gas utility bill for the Richmond property for the period of 30 days ending January 20, 1978, was paid by Odom in the amount of $76.09. On their 1978 tax return, petitioners reported $3,850 rental income from the Richmond property and claimed deductions as to the Richmond property totalling $6,410. Among the items *215 included in the $6,410 were the following: interest -- $3,107; taxes and licenses -- $499; utilities -- $92; and depreciation -- $2,000. Petitioners did not receive income from the Richmond property in 1977. On their 1977 tax return, petitioners did not report any income from the Richmond property, but claimed deductions relating thereto totalling $759, itemized as follows: auto and travel -- $15; insurance -- $68; "paint, clean, etc." -- $448; utilities -- $61; and depreciation -- $167. Respondent disallowed all of these 1977 deductions. During 1977, petitioners owned the following properties in North Carolina: (a) a farm in Hertford County on U.S. Route 13, near Ahoskie, (b) the farm house on this farm,[2] (c) a store in Ahoskie, (d) a house in Ahoskie, (e) a garage apartment in Ahoskie, and (f) a storage building in Ahoskie. Each of these properties, except the storage building, was rented during 1977. On their 1977 tax return, petitioners reported gross income from these properties totalling $4,915 and expenses, including depreciation, totalling $8,593. Of this total of expenses, $476 was listed as being for management fees; respondent disallowed this management fees deduction. *216 The $8,593 total also included $990 for a new roof on the store in Ahoskie. Petitioners deducted the entire $990 as a "Repairs" expense on their 1977 tax return. Respondent treated the expenditure as a capital item and allowed $57.75 depreciation, based on a 10-year useful life. During 1977, petitioners used one room in their residence as an office to manage their North Carolina properties. Their residence had eight rooms, three of which were bedrooms. The room petitioners used as an office was also used by them as their bedroom. On their 1977 tax return, petitioners deducted $180 as expenses for this office. Respondent disallowed this deduction. On their 1977 tax return, petitioners reported wage and salary income totalling $30,684. Odom was employed by the Bank as a real estate appraiser, for which he was paid $14,034. Petitioner Donna C. Odom was employed by Virginia Commonwealth University as an instructor, for which she was paid $16,650. For 1977, petitioners were cash basis taxpayers. OPINION As a preliminary matter, we discuss petitioners' evidence as to *217 certain payments. In an effort to show that they made certain payments, petitioners introduced photocopies of the fronts of 11 checks. The photocopies showed perforations, which read "PAID", followed by a date. As to six of the 11 photocopies, the perforated date was seven days or less after the handwritten date on the photocopy. In the case of certain photocopies with handwritten dates in the last four days of December 1977, the perforated dates were substantially later than the handwritten dates--in one instance, 18 months and 25 days later. The Court reminded Odom, both in a pretrial conference and several times at trial, that petitioners have the burden of proof. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). [3]
The Court recessed during the trial to give respondent an opportunity to secure information from the Bank, a task which the Court considered to be feasible since the Richmond property was in Richmond, the Bank was in Richmond, and the trial was being conducted in Richmond. Respondent was not able to get information from the Bank *218 during this recess because Odom refused to authorize the Bank to provide information to respondent. Under the circumstances, the Court stressed at the trial that where there appeared to be a discrepancy between the handwritten date on a photocopy and the perforated date on the same photocopy, it would be petitioners' burden to show whether the check was paid in 1977 or in a later year. The Court also stressed at the trial that petitioners would be treated as being on the cash basis unless they proved otherwise. See Rubnitz v. Commissioner,67 T.C. 621, 627 n. 7 (1977); Odom v. Commissioner,supra.
I. The Richmond Property
Respondent maintains that none of the claimed business expense deductions for the Richmond property should be allowed, because (1) petitioners were not carrying on a trade or business, within the meaning of section 162, [4] of renting residential real estate in Richmond during 1977, (2) petitioners' activities with respect to the Richmond property were not for the production of income, or for the management, conservation, or maintenance of property held for the production of income, within the meaning of section *219 212, (3) petitioners had no basis for depreciation in the Richmond property in 1977, and, as an alternative, (4) petitioners have failed to substantiate the deductions they claimed. Petitioners' position is that "Expenses and deductions are reasonable and should be allowed." At trial, petitioners claimed additional deductions for mortgage interest and real property taxes on account of a December 1977 payment to the mortgagee on the Richmond property. Petitioners did not claim these deductions on their 1977 tax return or in their petition; [5] however, this issue was tried by consent. Rule 41(b)(1). Respondent argues that petitioners have failed to substantiate their entitlement to these additional deductions. We agree with respondent. Sections 162(a)[6] and 212[7] allow deductions for expenses (1) of a trade or business, or (2) with respect to an income-producing activity or property held for the production of *220 income. However, otherwise ordinary and necessary expenses paid in connection with the acquisition of a capital asset are to be capitalized, and then amortized over the useful life of the asset. Woodward v. Commissioner,397 U.S. 572, 575-576 (1970); Cagle v. Commissioner,539 F.2d 409 (CA5 1976) affg. 63 T.C. 86 (1974); Dunlap v. Commissioner,74 T.C. 1377, 1425 (1980), revd. on a different issue 670 F.2d 785 (CA8 1982). See Commissioner v. Idaho Power Co.,418 U.S. 1, 13 (1974). [8] Also, expenditures which are made preparatory to entering a trade or business are not deductible as expenses of that trade or business, at least not until actual business operations are commenced. Bennett Paper Corp. v. Commissioner,78 T.C. 458, 463 (1982), on appeal (CA8 Apr. 21, 1982), and cases cited therein; Goodwin v. Commissioner,75 T.C. 424, 433 (1980), affd.     F.2d     (CA3 1982). *221 Viewing the Richmond property by itself, we conclude that as of the end of 1977 it was not yet being held in a trade or business or for the production of income. It was not being used by petitioners. It had not yet been rented to anyone. Petitioners acquired the Richmond property in order to rent it to Body; it was so rented in January 1978. Although petitioners owned several rental properties in or near Ahoskie, North Carolina, we cannot find that the Richmond property provided benefits to or was related to the North Carolina properties (cf. NCNB Corp. v. United States,     F.2d    , 50 AFTR2d 82-5281, 82-2 USTC par. 9469 (CA4 1982)), nor can we find that petitioners' activities with respect to the North Carolina properties were of such a level and scope that the Richmond property could fairly come under the umbrella of the North Carolina properties. Compare O'Donnell v. Commissioner,62 T.C. 781 (1974), affd. without pub. opin. 519 F.2d 1406 (CA7 1975), with York v. Commissioner,261 F.2d 421 (CA4 1958), revg. 29 T.C. 520 (1957). In NCNB, the Court of Appeals stressed that the *222 expenses of the taxpayer there involved, relating primarily to the opening of branch banking facilities, were necessary in order for the taxpayer to maintain its position in the banking industry. The Court of Appeals stated that, "It is a long recognized principle of tax law that expenditures for the protection of an existing investment, the continuation of an existing business, or the preservation of existing income from loss or diminution are ordinary and necessary business expenses within the meaning of IRC sec. 162." (    F.2d at    , 50 AFTR2d at 82-5284, 82-2 USTC at 84,704.) In the instant case, any 1977 expenditures for the Richmond property neither protected an existing investment, nor continued an existing business, nor preserved existing income. (In this connection, it is appropriate to note that on their 1978 return petitioners reported a loss from the Richmond property even before deducting depreciation. See n. 9, infra.) Our conclusion in the instant case, that no deductions are allowable under section 162 or 212 for 1977 with respect to the Richmond property, is consistent with the analysis of the Court of Appeals in *223 NCNB.
In York, in contrast to the instant case, the new property was in the same city as the properties already involved in the trade or business of the taxpayer there before the Court. Also, the level of the taxpayer's real estate activities in York was substantial, much greater than the level of petitioners' real estate activities in the instant case. Each of the petitioners in the instant case had a full-time job in 1977. The gross rentals they received from all their properties was less than one-sixth of their wage and salary income. We believe the instant case is much more like O'Donnell than like York, for the reasons set forth in our opinion in O'Donnell v. Commissioner,62 T.C. at 785-786. On the basis of the foregoing, we conclude that petitioners' 1977 expenditures with regard to the Richmond property are not deductible by them for 1977; these expenditures, to the extent they have tax significance, [9] are to be capitalized as part of their cost basis in the Richmond property. *224 As to petitioners' claimed deductions for real property taxes [10] and mortgage interest [11] in connection with the Richmond property, petitioners must show at a minimum that they paid the claimed amounts in 1977. Petitioners' evidence on this point is a photocopy of the front of a check in the amount of $352.57, signed by Odom, drawn on the bank, made payable to First Mortgage, and dated December 29, 1977. The photocopy shows perforations in the check stating "PAID 11.4.78". Odom testified in general *225 that the checks, that he introduced photocopies of the fronts of, were "Mailed as dated." [12] Also in evidence is a ledger sheet from First Mortgage, showing that on December 30, 1977, it processed a payment of $352.57 on the mortgage on the Richmond Property. In order to match this December 29, 1977, check to the December 30, 1977, First Mortgage payment entry, we would have to believe that First Mortgage received and processed the check promptly--internally--but then neglected for 10 months to present the check for payment. We have not been given any explanation of how or why this improbable event might have occurred. [13]
*226 On the basis of the foregoing, we conclude that petitioners have failed to show that they made any payment of mortgage interest on the Richmond property in 1977. There is an additional reason why we cannot allow the claimed real property tax deduction. Such a tax is deductible by a cash basis taxpayer when the tax is paid. A mortgagor's payment to a mortgagee (or to an escrow account) is not payment; the payment occurs when the mortgagee (or escrowee) transmits the funds to the taxing entity. Hradesky v. Commissioner,65 T.C. 87 (1975), affd. 540 F.2d 821 (CA5 1976). First Mortgage's ledger sheet shows that it paid taxes on account of the Richmond property in the amount of $242.25 on May 16, 1977, and a like amount on November 9, 1977 (totalling $484.50 in the year), out of escrow. Petitioners do not claim to have paid any real property taxes on the Richmond property before December 29, 1977. We conclude that petitioners did not make any such payment on account of the Richmond property in 1977. [14]
II. Management Fees
*227 Petitioners claim a deduction of $476 for management fees in connection with their rental properties in North Carolina. Respondent contends that these expenses were not paid in 1977. Petitioners maintain that the amounts were paid. We agree with respondent. Respondent does not dispute the deductibility of amounts paid for the management of petitioners' rental properties; such amounts appear to be deductible under either section 162 or section 212. Petitioners' evidence on this point is a photocopy of the front of a check in the amount of $476, signed by Odom, drawn on the Bank, made payable to "Realty Co.", and dated December 28, 1977. The photocopy shows perforations in the check stating "PAID 7.23.79". Our comments with regard to the mortgage payment photocopy, supra, apply here, except that the disparity between the handwritten date and the perforated date on the management fees photocopy is almost twice as great as the disparity as to the mortgage payment photocopy. This disparity was specifically brought to Odom's attention at the trial. Petitioners have offered no explanation of the disparity or other proof that payment occurred in 1977. On the basis *228 of the foregoing, we conclude that petitioners have failed to show that they made any payment of management fees in 1977 on their rental properties in North Carolina. We hold for respondent on this issue. III. New Roof
Respondent maintains that petitioners' expenditure for a new roof on one of their rental properties is a capital expenditure and deduction is allowable only by way of depreciation. Petitioners do not refer to this item on brief. They do not object to respondent's request for an ultimate finding of fact that the expenditure was a capital expenditure. Whether we treat petitioners' silence as a concession (see subparagraphs (4) and (5) of Rule 151(e)), or focus on petitioners' burden of proof, or apply section 263(a)(1), the answer is the same--petitioners' deduction is disallowed. We hold for respondent on this issue. IV. Office in the Home
Respondent maintains that petitioners have failed to satisfy the "exclusive use" test of section 280A(c)(1) with respect to the office in their home, and so are not entitled to their claimed deduction for the expenses of this office. Petitioners assert that the office in their home was necessary for supervision, *229 etc., of their rental properties, and that it was not sensible to rent office space outside their home for these purposes. We agree with respondent. Section 280A[15] forbids allowance of deductions for expenses of an office in the home unless the taxpayer surmounts certain hurdles. *230 In structuring section 280A, the Congress laid down as a general rule a prohibition on deductions with respect to use of the taxpayer's residence (sec. 280A(a)), but provided a series of exceptions, each with its own exceptions and limitations. Section 280A(c)(1) provides an exception from the general prohibition in those situations where a business use satisfies a series of requirements. The first of these requirements is that the office be "exclusively used" for the required business purpose. Petitioners' office was in the room used by them as their bedroom. Therefore, the room was not exclusively used for business purposes. Therefore, petitioners do not escape the general prohibition of section 280A(a) on deductions with respect to use of their residence. We hold for respondent on this issue. Decision will be entered for respondent.
Footnotes
1. Respondent's adjustment decreasing the amount of petitioners' medical expense deduction is solely derivative; it depends on our resolution of the issues described in the text.↩
2. This farm house is described in Odom v. Commissioner,T.C. Memo. 1979-53↩.
3. Unless indicated otherwise, all Rule references are to the Tax Court Rules of Practice and Procedure.↩
4. Unless indicated otherwise, all section references are to sections of the Internal Revenue Code of 1954 as in effect for the year in issue.↩
5. Petitioners have not claimed an overpayment on account of these claimed deductions. See section 6512(b).↩
6. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General.--There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, * * * ↩
7. SEC. 212. EXPENSES FOR PRODUCTION OF INCOME. In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year-- (1) for the production or collection of income; (2) for the management, conservation, or maintenance of property held for the production of income; * * * ↩
8. "Of course, reasonable wages paid in the carrying on of a trade or business qualify as a deduction from gross income. Section 162(a)(1) of the 1954 Code, 26 U.S.C. section 162(a)(1)↩. But when wages are paid in connection with the construction or acquisition of a capital asset, they must be capitalized and are then entitled to be amortized over the life of the capital asset so acquired."
9. Because of this conclusion we need not reach respondent's contentions that petitioners have failed to establish (1) that they spent the amounts they claim in 1977, and (2) that they had a cost basis in the Richmond property as of December 31, 1977. Also, we need not consider respondent's argument that petitioners' requisite profit motive was lacking, as is shown by their renting the Richmond property to Body for an amount that was not even sufficient to match petitioners' monthly payments to the mortgagee. See, e.g., Jasionowski v. Commissioner,66 T.C. 312, 322↩ (1976).
10. Section 164 provides, in pertinent part, as follows: SEC. 164. TAXES. (a) General Rule.--Except as otherwise provided in this section, the following taxes shall be allowed as a deduction for the taxable year within which paid or accrued: (1) State and local, and foreign, real property taxes. ↩
11. Section 163 provides as follows: SEC. 163. INTEREST. (a) General Rule.--There shall be allowed as a deduction all interest paid or accrued within the taxable year on indebtedness.↩
12. When a check has been paid on presentation, it is treated as payment to the payee as of the date of delivery. E.g., Estate of Spiegel v. Commissioner,12 T.C. 524↩ (1949).
13. Petitioners attached to their answering brief a photocopy of the back of a check. They assert that this is the same check as the one described in the text. This photocopy shows a stamped First Mortgage endorsement apparently dated December 30, 1977, and another stamped date of January 3, 1978. Firstly, we cannot tell if this is a photocopy of the back of the check described in the text. Secondly, petitioners have not asked that the record be reopened in order to receive this exhibit. Thirdly, at the trial Odom was urged to explain the apparent discrepancy and to present the original check so that it could be inspected. He did not do so at the trial and the photocopy attached to petitioners' answering brief is not an adequate substitute. In sum, the photocopy attached to petitioners' answering brief is not part of the record, the Court will not make the photocopy part of the record on the Court's own motion, and in any event the photocopy would not explain the apparent conflict between the date written on the check and the "paid" date that appears in the check perforations.↩
14. No suggestion is made that any deduction would be allowable to petitioners by virtue of section 164(d)↩.
15. Section 280A provides, in pertinent part, as follows: SEC. 280A. DISALLOWANCE OF CERTAIN EXPENSES IN CONNECTION WITH BUSINESS USE OF HOME, RENTAL OF VACATION HOMES, ETC. (a) General Rule.--Except as otherwise provided in this section, in the case of a taxpayer who is an individual * * *, no deduction otherwise allowable under this chapter shall be allowed with respect to the use of a dwelling unit which is used by the taxpayer during the taxable year as a residence. (c) Exceptions for Certain Business or Rental Use; Limitation on Deductions for Such Use.-- (1) Certain business use.--Subsection (a) shall not apply to any item to the extent such item is allocable to a portion of the dwelling unit which is exclusively used on a regular basis-- (A) [as] the principal place of business for any trade or business of the taxpayer. [,] (B) as a place of business which is used by patients, clients, or customers in meeting or dealing with the taxpayer in the normal course of his trade or business, or (C) in the case of a separate structure which is not attached to the dwelling unit, in connection with the taxpayer's trade or business. In the case of an employee, the preceding sentence shall apply only if the exclusive use referred to in the preceding sentence is for the convenience of his employer. [The foregoing reflects an amendment enacted in 1981 (by sec. 113(c) of Pub. L. 97-119, 95 Stat. 1642), which applies to taxable years beginning after December 31, 1975.]↩